STATE OF NORTH CAROLINA v. ANTHONY LEE McKOY

No. 425A91

(Filed 19 November 1992)

1. **Evidence and Witnesses § 1252 (NCI4th)— murder—invocation of right to counsel—mistake in signing form—further questioning**

   The trial court did not err in a murder prosecution by denying defendant's motion to suppress an inculpatory statement made while in custody where the State's evidence was that defendant waived his *Miranda* rights at an initial interview when he was not under arrest; indicated to officers after he was arrested that he wanted to waive his rights; signed a form at a place indicating that he did not waive his rights; and, after being questioned by officers as to whether he had intentionally signed the waiver form indicating that he did not want to waive his rights, scratched out his first signature, waived his rights, and made a statement. Although defendant contended that there was nothing ambiguous or equivocal about the defendant signing the non-waiver portion of the form and that the officers could not question him further, officers who are conducting a custodial interrogation may make a further inquiry to determine whether the person being interrogated has expressed his true feeling in answering a question when the context in which the answer was given indicates that the person has made a mistake.

   **Am Jur 2d, Criminal Law § 797.**

   **What constitutes assertion of right to counsel following Miranda warnings: state cases. 83 ALR4th 443, sec. 1.**

   **What constitutes assertion of right to counsel following Miranda warnings: federal cases. 80 ALR Fed 622, supp. sec. 1.**

2. **Homicide § 380 (NCI4th)— murder—defense of others—necessity—evidence not sufficient**

   The trial court did not err in a murder prosecution by not charging on self-defense based on the defense of a third person where the evidence does not support a finding that there could have been a reasonable belief in the mind of a

person of ordinary firmness that it was necessary to stab the victim in order to defend the third person.

**Am Jur 2d, Homicide §§ 291, 519-521.**

**Construction and application of statutes justifying the use of force to prevent the use of force against another. 71 ALR4th 940.**

**Standard for determination of reasonableness of criminal defendant's belief, for purposes of self-defense claim, that physical force is necessary—modern cases. 73 ALR4th 993, sec. 1.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment for first degree murder entered by Jenkins, J., at the 18 February 1991 Criminal Session of Superior Court, Lee County, upon a jury verdict of guilty of first degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgment allowed by the Supreme Court 6 January 1992. Heard in the Supreme Court 9 September 1992.

The defendant was tried for his life for first degree murder. He was also tried in the same action for felonious larceny. The State's evidence showed that the body of William Frank Buchanan was found at his residence in Sanford on 11 January 1990 by his sister and his niece. Mr. Buchanan had been stabbed in the back and strangled with a bedsheet.

Kevin Gray and James Eads, detectives with the Sanford Police Department, testified that they arrested the defendant on 16 January 1990. They testified further that defendant first told them that he killed Mr. Buchanan for money and that he acted alone. He then changed his story and said a person named Tim Judd went with him to Mr. Buchanan's home on the night of 10 January 1990. The defendant told the detectives that Judd and Mr. Buchanan quarreled and Mr. Buchanan advanced on Judd with a knife. The defendant said that he took the knife from Mr. Buchanan who then seized a lamp and tried to hit Judd with it. At that time, the defendant stabbed Mr. Buchanan in the back with the knife. Mr. Buchanan fell to the floor and the defendant then choked him with the bedsheet. Tim Judd testified he was not in Mr. Buchanan's home during the night in which Mr. Buchanan was killed.

The defendant was convicted of first degree murder and felonious larceny. The jury recommended that the defendant be sentenced to life in prison and this sentence was imposed. The court imposed a sentence of ten years on the felonious larceny conviction to commence at the expiration of the life sentence.

*Lacy H. Thornburg, Attorney General, by G. Patrick Murphy, Special Deputy Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Constance H. Everhart, Assistant Appellate Defender, for defendant appellant.*

WEBB, Justice.

[1] The defendant first assigns error to the denial of a motion to suppress an inculpatory statement he made while he was in custody on the ground that he did not waive his right to counsel before making the statement. *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378 (1981). A hearing on this motion was held prior to the trial of the case.

The State's evidence showed that Mr. Eads and Mr. Gray interviewed the defendant on 12 January 1990, at which time the defendant was not under arrest. The officers warned him of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), and the defendant signed a written waiver of these rights. The defendant denied any involvement on 10 January 1990 with Mr. Buchanan. On 16 January 1990 an arrest warrant was issued for the defendant and the two officers placed him under arrest.

After the defendant was arrested on 16 January 1990, he was again warned of his *Miranda* rights and he indicated to the officers that he wanted to waive them. A waiver form was submitted to the defendant and he signed on the form at a place which indicated he did not waive his rights.

The officers then questioned the defendant as to whether he had intentionally signed the waiver form at a place which indicated he did not want to waive his rights under *Miranda*. Mr. Eads testified:

I asked Mr. McKoy if he had made a mistake. And he looked at me and I informed him he had signed a non-waiver which stated he either did not desire to talk to us or answer any of the questions or he desired his lawyer. I questioned him

to see whether he still wanted to talk to us or whether he desired his lawyer. He declined to either have his lawyer present, and still desired to answer our questions, at which time he signed the top line and then scratched out his name in his own hand at the bottom of the page.

The defendant testified that he told the officers that he did not want to answer any questions and he wanted an attorney. He also testified that the officers continued to question him after he had signed the waiver form, but he refused to answer any questions.

At the conclusion of the hearing, the court made findings of fact consistent with the State's evidence. It found that the defendant had made a mistake when he signed the form in a place which indicated he did not want to waive his rights. The court ordered that the defendant's statement to the officers could be introduced into evidence.

The defendant, relying on *Miranda*, contends that when he signed the non-waiver portion of the form, this indicated to the officers that he did not want to talk to them and that he wanted an attorney. At that time, says the defendant, all interrogation had to cease and nothing he said after that could be used against him. The defendant argues further that *Edwards v. Arizona*, 451 U.S. 477, 68 L. Ed. 2d 378, establishes the rule that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.*, 451 U.S. at 484, 68 L. Ed. 2d at 386. The defendant says that when he signed the non-waiver portion of the form, the officers could not question him further and his statements made after he had invoked his right to remain silent and have an attorney cannot be used to show he had waived those rights.

The superior court found that the defendant made a mistake when he signed the portion of the form which showed he did not waive his *Miranda* rights. This finding was supported by the evidence. The question posed by this assignment of error is whether officers who are conducting a custodial interrogation may make a further inquiry to determine whether the person being interrogated has expressed his true feeling in answering a question when the context in which the answer was given indicates such a person has made

a mistake. We hold that such an inquiry may be made. We believe such a rule promotes the interests protected by *Miranda* and its progeny. It enhances the search for the truth and it does not infringe on a person's right not to be a witness against himself and to be represented by an attorney.

The defendant concedes that if the person being interrogated makes an ambiguous or equivocal statement as to whether he waives his *Miranda* rights, it has been held that the interrogator may ask questions to clarify the answer. *See State v. Torres*, 330 N.C. 517, 412 S.E.2d 20 (1992); *Ruffin v. United States*, 524 A.2d 685 (D.C. App. 1987), *cert. denied*, 486 U.S. 1057, 100 L. Ed. 2d 927 (1988). He says these cases are not applicable to this case because there was nothing ambiguous or equivocal about the defendant's statement. We believe the same rule should apply. If there is evidence, in the context in which an answer is given, that the person being interrogated made a mistake in the way he answered, the interrogator should be allowed to ask questions which will clarify the answer.

This assignment of error is overruled.

[2] The defendant next assigns error to the court's failure to charge on self-defense based on the defense of a third person. The defendant bases this argument on the statement made by the defendant to the two officers who interrogated him on 16 January 1990. The defendant told the officers that Mr. Buchanan had quarreled with Tim Judd and advanced on Mr. Judd with a knife. The defendant said he took the knife from Mr. Buchanan. Mr. Buchanan then started to hit Mr. Judd with a lamp, at which time the defendant stabbed Mr. Buchanan in the back with the knife.

A person has the right to kill not only in his own self-defense but also in the defense of another. *State v. Carter*, 254 N.C. 475, 119 S.E.2d 461 (1961). A person may lawfully do in another's defense, however, only what the other might lawfully do in his own defense. *State v. McLawhorn*, 270 N.C. 622, 155 S.E.2d 198 (1967).

The defendant contends that on the evidence he was entitled to an instruction on self-defense for his defense of Judd. We have held that there are two types of self-defense. One type is called perfect self-defense which excuses a killing altogether. We also have what we have called imperfect self-defense which may reduce

murder to voluntary manslaughter. *State v. Bush*, 307 N.C. 152, 297 S.E.2d 563 (1982). In order to have either perfect or imperfect self-defense, the evidence must show that it appeared to defendant and he believed it to be necessary to kill the deceased in order to save himself or another from death or great bodily harm. It must also appear that the defendant's belief was reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness. *State v. McAvoy*, 331 N.C. 583, 417 S.E.2d 489 (1992); *State v. Norris*, 303 N.C. 526, 279 S.E.2d 570 (1981).

We hold that there was not sufficient evidence in this case to warrant a charge on either perfect or imperfect self-defense. The defendant's argument fails in that the evidence does not support a finding that there could have been a reasonable belief in the mind of a person of ordinary firmness that it was necessary to stab Mr. Buchanan in order to defend Mr. Judd. The defendant had taken the knife from Mr. Buchanan a few minutes before he said the assault on Mr. Judd occurred. It should have been easier to take the lamp. The evidence does not show the age or size of Mr. Judd, but it does show the defendant was 27 years of age at the time of the incident. Mr. Buchanan was 64 years of age, five feet nine inches tall and weighed 166 pounds. A reasonable man with a mind of ordinary firmness could not have believed it necessary to launch a deadly assault on Mr. Buchanan if Mr. Buchanan was attempting to use a lamp as a weapon against Mr. Judd. There were two men present to defend against the assault. The defendant should have known, as a reasonable man would have known, that without too much difficulty the two men could have defended against the assault by Mr. Buchanan without resorting to deadly force.

This assignment of error is overruled.

NO ERROR.