STATE OF NORTH CAROLINA v. CHAD ANSON ROSS

No. 52A94

(Filed 3 November 1994)

### 1. Homicide § 589 (NCI4th)— murder trial—self-defense instruction not required

The trial court did not err in failing to instruct the jury on the State's burden of proof with regard to self-defense in a first-degree murder trial where all of the evidence, including defendant's statement, tended to show that the victim was unarmed and walking away from defendant when defendant shot him in the back, since defendant was not facing an imminent threat of death or great bodily harm from the victim when he fired the fatal shot, and a reasonable person of ordinary firmness could not have believed it was necessary to use deadly force on the victim.

**Am Jur 2d, Homicide §§ 519 et seq.**

**Duty of trial court to instruct on self-defense, in absence of request by accused. 56 ALR2d 1170.**

**Homicide: modern status of rules as to burden and quantum of proof to show self-defense. 43 ALR3d 221.**

### 2. Jury § 258 (NCI4th)— peremptory challenge of black juror—failure to show racial discrimination

Defendant failed to make a prima facie showing of racial discrimination in the State's exercise of a peremptory challenge to remove a black male juror from the jury in defendant's trial for first-degree murder where the record reveals that the jury consisted of ten white jurors and two black jurors; this was the only peremptory challenge exercised by the prosecutor in defendant's trial; the prosecutor accepted two black women as members of the jury; the prosecutor accepted one of the black women at the same time he challenged the black male juror, indicating that he was not attempting to strike all blacks; the prosecutor did not move to strike any jurors for cause and thus accepted 66% of the black potential jurors; nothing in the prosecutor's questions or statements in the exercise of his challenge to the black male juror evidenced any discriminatory motive; and defendant pointed to no evidence indicating discriminatory intent. The mere facts that defendant is a member of a cognizable racial group and that the

prosecutor used one peremptory challenge to exclude a member of defendant's race do not raise the necessary inference of discrimination on account of the juror's race.

**Am Jur 2d, Jury § 235.**

**Proof as to exclusion of or discrimination against eligible class or race in respect to jury in criminal case. 1 ALR2d 1291.**

**Use of peremptory challenge to exclude from jury persons belonging to a class or race. 79 ALR3d 14.**

**Supreme Court's view as to use of peremptory challenges to exclude from jury persons belonging to same race as criminal defendant. 90 L. Ed. 2d 1078.**

3. **Homicide § 237 (NCI4th)— prior altercation—shooting victim in back—sufficient evidence of first-degree murder**

The evidence was sufficient to sustain defendant's conviction of first-degree murder where it tended to show that defendant and the victim fought earlier in evening, denoting ill will between the parties, which is a circumstance tending to prove premeditation and deliberation; defendant followed the victim to a convenience store parking lot to continue the fight; defendant knew the victim was unarmed; and at the time defendant shot the victim, the victim had turned his back to defendant and was walking away from him.

**Am Jur 2d, Homicide § 452.**

Appeal of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Barnette, J., on 3 November 1993 in Superior Court, Lee County, upon a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 11 October 1994.

*Michael F. Easley, Attorney General, by John H. Watters, Special Deputy Attorney General, for the State.*

*G. Hugh Moore for defendant-appellant.*

WHICHARD, Justice.

Defendant was indicted for the first-degree murder of James Wilson Redwine and tried noncapitally. A jury found him guilty, and the trial court sentenced him to life imprisonment. We find no error.

STATE v. ROSS

[338 N.C. 280 (1994)]

The State's evidence tended to show that on the evening of 24 March 1993 William Jenkins, some friends, and the victim were drinking beer at the victim's apartment. They later went to Family Billiards in Jonesboro. That same evening Alfred Creque, some friends, and defendant also went to Family Billiards. As defendant, Creque, and the others were about to go inside, the victim approached them and acted as if he were looking in the car. Members of the group argued with the victim. Defendant then went into Family Billiards, but returned shortly thereafter. Both defendant and Creque argued with the victim again when the victim said something about "nigger" (both defendant and Creque are black; the victim was white). While the three were arguing, William Jenkins grabbed the victim, and they got into a cab. Before closing the door, the victim told Creque and defendant to follow him.

Creque and defendant followed the cab to The Pantry, a convenience store. The cab drove away, and members of the group began to argue again. Jenkins informed the victim that he was going home, and he left. After Jenkins was gone, the victim repeatedly told Creque and defendant he wanted a ride home. Defendant told the victim he was not going anywhere in their car. He and the victim then began to argue again, and eventually began to fight. After a brief fistfight, the victim walked over to Creque, struck him in the face, and walked away. The victim then got into a karate-like stance, and defendant hit him. They began to fight again. After fighting for a few minutes, they stopped, and the victim started towards Creque as if he were going to hit him. At this point defendant reached into the driver's side of the car and pulled out a .38 pistol from behind the seat. The victim apparently saw the weapon and turned his back to defendant. Defendant shot the victim in the back one time. He and Creque then got into the car and drove to Creque's house.

The victim died as a result of complications due to the gunshot wound. At the time of his death, he had a blood alcohol level of .16 on the breathalyzer scale.

Defendant presented evidence that on the evening of 24 March 1993, the victim and the billiard hall owner's husband got into an argument when the victim insisted on calling the black customers in the billiard hall "nigger" and the owner's husband asked him to keep his mouth shut. They almost got into a fistfight, and as a result the husband refused to serve the victim any alcoholic beverages. When the victim later asked for something to drink and the owner informed

him that he had been cut off, he cursed and asked the owner to call him a cab. The billiard hall owner testified that she also saw defendant that night, but did not see him consume any alcohol.

Another defense witness, Ross Hunter, testified that he was a friend of Alfred Creque, and that he had stolen a gun from his father's girlfriend and given it to Creque to sell for him. Hunter and Creque were to split equally the proceeds from the sale of the weapon. Hunter also identified the weapon that was used to kill the victim as the weapon he had stolen, but he testified that he had never seen defendant with the weapon.

[1] Defendant first assigns as error the trial court's failure to instruct on the State's burden of proof with regard to self-defense. Defendant contends that based on the evidence that he allegedly was assaulted by a drunken man who was moving erratically, assuming a martial arts stance, and bragging about his time in prison, the jury should have been allowed to consider whether perfect or imperfect self-defense might be applicable.

There are two types of self-defense: perfect and imperfect. *State v. McKoy*, 332 N.C. 639, 643-44, 422 S.E.2d 713, 716 (1992). Perfect self-defense excuses a killing altogether, while imperfect self-defense may reduce a charge of murder to voluntary manslaughter. *Id.* For defendant to be entitled to an instruction on either perfect or imperfect self-defense, the evidence must show that defendant believed it to be necessary to kill his adversary in order to save himself from death or great bodily harm. *Id.* at 644, 422 S.E.2d at 716; *State v. Bush*, 307 N.C. 152, 160, 297 S.E.2d 563, 569 (1982). In addition, defendant's belief must be "reasonable in that the circumstances as they appeared to him at the time were sufficient to create such a belief in the mind of a person of ordinary firmness." *McKoy*, 332 N.C. at 644, 422 S.E.2d at 716; *see also Bush*, 307 N.C. at 160, 297 S.E.2d at 569.

We hold that the evidence here was not sufficient to warrant an instruction on either perfect or imperfect self-defense. Defendant failed to present evidence to support a finding that he in fact formed a belief that it was necessary to kill the victim in order to protect himself from death or great bodily harm; nor is there evidence that if defendant had formed such a belief, the belief was reasonable under the circumstances. Defendant's own statement acknowledged that the victim was unarmed and walking away from defendant when defendant shot him in the back. Thus, defendant was not facing an imminent threat of death or great bodily harm from the victim when

defendant fired the fatal shot. Under these circumstances, a reasonable person of ordinary firmness could not have believed it was necessary to use deadly force on the victim. Therefore, the trial court did not err in failing to instruct on the State's burden of proof with regard to self-defense. *See State v. Exxum*, 338 N.C. 297, 449 S.E.2d 554 (1994).

[2]  Defendant next assigns as error the trial court's ruling, in response to defendant's objection to the State's peremptory challenge of a prospective juror, that defendant had not made a prima facie showing of racial discrimination. The State exercised only one peremptory challenge during jury selection, removing a black man from the jury. Defendant asserts that none of the prospective juror's answers materially distinguished him from the jurors accepted, and his answers to the questions posed on voir dire gave no indication that he would be unable to render a fair and impartial verdict. Consequently, defendant concludes that the State was motivated by discrimination to eliminate from the jury the only person who was a true peer of defendant, who is a black man. Defendant contends that the high acceptance rate of other jurors by the State and the fact that the black male juror was singled out are sufficient to make a prima facie showing of racial discrimination.

Article I, Section 26 of the North Carolina Constitution prohibits the exercise of peremptory challenges based solely on the race of the prospective juror. *State v. Glenn*, 333 N.C. 296, 301, 425 S.E.2d 688, 692 (1993). The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution also prohibits such discrimination. *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). In *Batson* the United States Supreme Court held that "the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Id.* at 89, 90 L. Ed. 2d at 83.

In *Batson* the Supreme Court also established a three-part test for determining whether a defendant has established a prima facie case of purposeful discrimination:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that

peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Id.* at 96, 90 L. Ed. 2d at 87-88 (citations omitted). Thus, the initial burden rests "on the defendant who alleges such racial discrimination to make a prima facie showing that the prosecutor exercised peremptory challenges to exclude jurors because of their race." *Glenn,* 333 N.C. at 302, 425 S.E.2d at 692.

In the cases since *Batson* addressing the issue of peremptory challenges, this Court has identified several factors which may be relevant in determining whether a defendant has raised an inference of discrimination. Among these are the defendant's race, the victim's race, and the race of key witnesses. *State v. Thomas,* 329 N.C. 423, 431, 407 S.E.2d 141, 147 (1991); *State v. Smith,* 328 N.C. 99, 120, 400 S.E.2d 712, 724 (1991). Another may be questions and statements made by the prosecutor during jury selection which tend to support or refute an inference of discrimination. *Thomas,* 329 N.C. at 431, 407 S.E.2d at 147; *Smith,* 328 N.C. at 120-21, 400 S.E.2d at 724; *State v. Robbins,* 319 N.C. 465, 489, 356 S.E.2d 279, 293, *cert. denied,* 484 U.S. 918, 98 L. Ed. 2d 226 (1987). Finally, one of the most important considerations is whether there was repeated use of peremptory challenges against blacks such that it tends to establish a pattern of strikes against blacks in the venire, *Smith,* 328 N.C. at 121, 400 S.E.2d at 724, or "the prosecution's use of a disproportionate number of peremptory challenges to strike black jurors in a single case . . . ." *Robbins,* 319 N.C. at 490-91, 356 S.E.2d at 294.

On the other hand, one factor tending to refute an allegation of purposeful discrimination is the acceptance rate of black jurors by the State. *Smith,* 328 N.C. at 121, 400 S.E.2d at 724. The frequency with which a prosecutor accepts blacks on the jury is relevant to the determination of whether he or she is discriminating against black jurors on the basis of race. *Id.; see State v. Allen,* 323 N.C. 208, 219, 372 S.E.2d 855, 862 (1988) (minority acceptance rate of 41% failed to establish prima facie case of discrimination); *State v. Abbott,* 320 N.C. 475, 481-82, 358 S.E.2d 365, 369 (1987) (acceptance rate of 40% failed to establish prima facie case); *State v. Belton,* 318 N.C. 141, 159-60, 347 S.E.2d 755, 766 (1986) (acceptance rate of 50% failed to establish

prima facie case). However, the acceptance rate of minorities is not necessarily the dispositive factor in the inquiry. *Smith,* 328 N.C. at 121, 400 S.E.2d at 724. The acceptance rate may not necessarily reveal the prosecutor's intent to discriminate if the prosecutor exhausts his or her peremptory challenges and has no choice but to accept the replacement jurors. *Id.* Further, regardless of the acceptance rate, a number of other factors or circumstances may evidence an intent to discriminate. *Id.* (acceptance rate of 42.8% not sufficient to refute allegations of discriminatory intent when the case involved an inter-racial killing with highly charged racial emotions, the prosecutor made statements with respect to race, and the State exercised 80% of its peremptories to remove black potential jurors). Nevertheless, absent such circumstances, the acceptance rate of black jurors may be the best evidence of an intent to discriminate *vel non. Id.*

From all the evidence we conclude that defendant failed to establish a prima facie case of purposeful discrimination. The mere facts that defendant is a member of a cognizable racial group and that the prosecutor used one peremptory challenge to exclude a member of defendant's race do not raise the necessary inference of discrimination on account of the juror's race. The record reveals that the jury consisted of ten white jurors and two black jurors. The only peremptory challenge exercised by the prosecutor excused a black man from the jury. However, the prosecutor also accepted the two women who were the other black members of the jury venire. He accepted one at the same time he challenged the black male juror, indicating that he was not attempting to strike all blacks. Further, he did not move to strike any jurors for cause. Thus, he accepted 66% of the black potential jurors.

In addition, nothing in the prosecutor's questions or statements in the exercise of his challenge to the black male potential juror evidenced any discriminatory motive. Except for evidence that defendant was black and the victim was white, no facts or circumstances suggest any inference of purposeful discrimination. Defendant does not offer any specific examples of the prosecutor's discriminatory use of the peremptory challenge or point to any evidence indicating discriminatory intent.

Defendant's unsubstantiated allegation that a prospective black juror was excluded from the jury on the basis of race is not sufficient to establish a prima facie case of racial discrimination. Therefore, the trial court did not err in ruling that defendant had not established a prima facie case of racial discrimination.

**[3]**  By his final assignment of error, defendant contends the trial court erred in denying his motion to dismiss the first-degree murder charge. He argues that the evidence was insufficient to sustain a conviction.

In ruling on a motion to dismiss a charge of first-degree murder, the trial court must consider the evidence in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn from that evidence. *State v. Carter*, 335 N.C. 422, 429, 440 S.E.2d 268, 271 (1994); *State v. McAvoy*, 331 N.C. 583, 589, 417 S.E.2d 489, 493 (1992). Any contradictions and discrepancies in the evidence are for the jury to resolve and do not require dismissal. *Carter*, 335 N.C. at 429, 440 S.E.2d at 271-72. Further, there must be substantial evidence tending to prove each element of the offense charged and that defendant committed the crime. *Id.*; *State v. Jackson*, 317 N.C. 1, 22, 343 S.E.2d 814, 827 (1986), *judgment vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

First-degree murder is the unlawful killing of a human being with malice, premeditation and deliberation. *See* N.C.G.S. § 14-17 (1993); *Carter*, 335 N.C. at 429, 440 S.E.2d at 272. "Premeditation" means that the defendant formed the specific intent to kill " 'for some length of time, however short,' " before committing the murderous act. *State v. Joyner*, 329 N.C. 211, 215, 404 S.E.2d 653, 655 (1991) (quoting *State v. Biggs*, 292 N.C. 328, 337, 233 S.E.2d 512, 517 (1977)); *see also Carter*, 335 N.C. at 429, 440 S.E.2d at 272. "Deliberation" is defined as an intent to kill formed by defendant in a cool state of blood, and not as a result of a violent passion arising from legally sufficient provocation. *Carter*, 335 N.C. at 429, 440 S.E.2d at 272; *McAvoy*, 331 N.C. at 589, 417 S.E.2d at 494.

The evidence, taken in the light most favorable to the State, showed that defendant and the victim fought earlier in the evening, denoting previous ill-will between the parties. Ill-will or previous difficulty between the parties is a circumstance tending to prove premeditation and deliberation. *Carter*, 335 N.C. at 429, 440 S.E.2d at 272; *State v. Huffstetler*, 312 N.C. 92, 109-10, 322 S.E.2d 110, 121 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). Further, defendant followed the victim to the convenience store parking lot, presumably to continue the fight. More importantly, at the time

defendant shot the victim, the victim had turned his back to defendant and was walking away from him. Defendant knew the victim was unarmed. A reasonable juror clearly could accept this evidence as sufficient to support a conclusion that defendant acted with malice, premeditation and deliberation, and the trial court thus did not err in denying defendant's motion to dismiss the first-degree murder charge.

We conclude that defendant received a fair trial, free from prejudicial error.

NO ERROR.