STATE OF NORTH CAROLINA v. PRENTISS QUICK

No. 459A94

(Filed 28 July 1995)

**Jury § 257 (NCI4th)— sexual offenses—black defendant and white victim—peremptory challenges of two blacks—no prima facie case of racial discrimination**

The prosecutor's peremptory excusal of two of four black jurors in a case involving sexual offenses against a white woman by a black man is insufficient, standing alone, to establish a *prima facie* case of racial discrimination and require the prosecutor to come forward with race-neutral reasons.

**Am Jur 2d, Jury § 244.**

STATE v. QUICK

[341 N.C. 141 (1995)]

Justice FRYE dissenting.

Justice WEBB joins in this dissenting opinion.

Justice ORR did not participate in the consideration or decision of this case.

Appeal by the State pursuant to N.C.G.S. § 7A-30(2) from an unpublished decision of a divided panel of the Court of Appeals, 116 N.C. App. 362, 448 S.E.2d 149 (1994), remanding this case to the Superior Court, Guilford County, for a hearing to determine if the prosecutor could articulate race-neutral reasons for his peremptory challenges. The Court of Appeals found no error as to the only other assignment of error before it on appeal. Heard in the Supreme Court on 12 May 1995.

*Michael F. Easley, Attorney General, by John F. Maddrey, Assistant Attorney General, for the State-appellant.*

*Charles W. Wannamaker III, Assistant Public Defender, for defendant-appellee.*

MITCHELL, Chief Justice.

The defendant was tried at the 11 January 1993 Criminal Session of Superior Court, Guilford County, upon proper indictments for first-degree rape, two counts of robbery with a dangerous weapon, two counts of first-degree kidnapping, and two counts of first-degree sexual offense. The State's evidence tended to show that on 22 August 1992, the victims, Robert and Judy Bechtold, left a High Point restaurant around 11:15 p.m. to drive home in their van. Two black males approached the Bechtolds as they walked toward their van in a nearby parking lot. Each man held a knife, and they forced the Bechtolds into the van. The two men also got into the van and forced Mr. Bechtold to drive to a secluded location. Various items of jewelry and other personal property were taken from the Bechtolds.

Defendant forced Mrs. Bechtold out of the van at knifepoint and took her to a grassy area. Defendant forced her to engage in sexual intercourse, fellatio, and cunnilingus with him before they returned to the other assailant and Mr. Bechtold. Mrs. Bechtold was then sexually assaulted by the other assailant. Defendant and the other assailant then took a cellular bag telephone from the van and abandoned the victims.

STATE v. QUICK

[341 N.C. 141 (1995)]

Defendant was observed the following day with a bag telephone by police. The police subsequently determined that the phone belonged to the victims. Defendant was arrested and gave an inculpatory statement which was introduced into evidence.

The jury rendered verdicts finding defendant guilty of each of the charged offenses. Judge Albright entered judgments on 15 January 1993 imposing three consecutive life sentences for the first-degree rape and the two first-degree sexual offenses. Judge Albright also entered judgments imposing consecutive forty-year prison sentences for each of the other four convictions.

Defendant appealed his convictions and sentences to the Court of Appeals. The Court of Appeals held that the trial court had erred in concluding that defendant had failed to make a *prima facie* case of purposeful racial discrimination by the prosecutor in jury selection and remanded this case to the Superior Court, Guilford County, for a determination as to whether the prosecutor could articulate race-neutral reasons for his peremptory challenges of two black jurors. Judge (now Justice) Orr dissented from the decision of the majority in the Court of Appeals, and the State appealed to this Court as a matter of right pursuant to N.C.G.S. § 7A-30(2).

The State argues that the Court of Appeals erred in concluding that defendant had established a *prima facie* case of purposeful racial discrimination. At trial, the racial composition of the original twelve prospective jurors called to the jury box was three black females, one black male, five white females, and three white males. When the prosecutor completed his questioning of the original panel, he peremptorily challenged a black female juror and the lone black male juror. Defendant objected to the peremptory challenges of the two black jurors, and the trial court heard arguments in chambers. Defendant contended that the State could not excuse a black member of the *venire* without giving a basis for the excusal other than race. The trial court held that defendant had failed to make a *prima facie* case that the prosecutor's peremptory challenges were based on race or motivated by racial considerations. The trial court also noted that the State had accepted two of the four black jurors from the original panel of twelve.

In *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), the Supreme Court of the United States held that the Equal Protection Clause of the Fourteenth Amendment prohibits prosecutors from peremptorily challenging jurors solely on the basis of race. *Id.* at 89,

90 L. Ed. 2d at 83. Article I, Section 26 of the North Carolina Constitution also prohibits the exercise of peremptory challenges solely on the basis of race. *State v. Glenn*, 333 N.C. 296, 301, 425 S.E.2d 688, 692 (1993).

A defendant alleging racial discrimination in jury selection has the burden of making a *prima facie* showing that the prosecutor exercised peremptory challenges on the basis of race; otherwise, the prosecutor need not come forward with race-neutral explanations for his excusals. *See id.* at 302, 425 S.E.2d at 692. *Batson* established a test for determining whether a defendant has established a *prima facie* case of purposeful racial discrimination:

> To establish such a case, the defendant first must show that he is a member of a cognizable racial group, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.

*Batson*, 476 U.S. at 96, 90 L. Ed. 2d at 87-88 (citations omitted). Both the test set forth in *Batson* and the underlying reasoning of that case were later substantially modified, however, by the opinion of the Supreme Court of the United States in *Powers v. Ohio*, 499 U.S. 400, 113 L. Ed. 2d 411 (1991), which rejected the first part of the *Batson* test quoted above and held that a white defendant has standing to assert an equal protection claim when a prosecutor uses peremptory challenges to exclude black potential jurors solely by reason of their race. *See State v. Robinson*, 330 N.C. 1, 409 S.E.2d 288 (1991). Therefore, to make out a *prima facie* case of discrimination, a defendant need only show that the relevant circumstances raise an inference that the prosecutor used peremptory challenges to remove potential jurors solely because of their race. *Id.*

Once a defendant has made a *prima facie* case, the burden of production shifts to the prosecutor to come forward with race-neutral explanations for the peremptory challenges. *Purkett v. Elem*, —— U.S. ——, ——, 131 L. Ed. 2d 834, 839 (1995). However, the law "does not demand [a race-neutral] explanation that is persuasive, or even

plausible. 'At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.' " *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 360, 114 L. Ed. 2d 395, 406 (1991)).

The issue raised by this appeal is whether the prosecutor's peremptory excusal of two of four black jurors in this case involving sexual offenses against a white woman by a black man is sufficient, standing alone, to establish a *prima facie* case of racial discrimination and require the prosecutor to come forward with race-neutral explanations. We conclude that these facts are not sufficient to establish such a *prima facie* case.

The instant case is very similar to our recent case of *State v. Ross*, 338 N.C. 280, 449 S.E.2d 556 (1994). That case also involved a black defendant and a white victim. In *Ross*, the prosecutor used his only peremptory challenge against a black juror. As in the instant case, the defendant in *Ross* essentially argued that the mere fact that a prosecutor exercises peremptory challenges solely against black jurors is sufficient to establish a *prima facie* case of purposeful racial discrimination. We rejected that argument in *Ross*.

In reaching our holding in the present case, we note that defendant is a black man, and two black venirepersons were excused by the prosecutor. Our holding also takes into account the fact that peremptory challenges can be used for discriminatory purposes by those who are of a mind to discriminate. However, "it is not unconstitutional, without more, to strike one or more blacks from the jury." *Batson*, 476 U.S. at 101, 90 L. Ed. 2d at 91 (White, J., concurring). Therefore, we must look to "the several factors which may be relevant in determining whether a defendant has raised an inference of discrimination." *Ross*, 338 N.C. at 285, 449 S.E.2d at 561. Those factors include the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against blacks such that it tends to establish a pattern of strikes against blacks in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike black jurors in a single case, and the State's acceptance rate of potential black jurors. *Id.*

Nowhere in the record in this case are there statements or questions by the prosecutor which give rise to an inference of racial dis-

crimination. Additionally, the prosecutor used only two of his peremptory challenges. The mere fact that he used them against two black venirepersons in this case does not establish a pattern of strikes or show a disproportionate number of peremptory challenges against black jurors. Further, the State's acceptance rate of blacks was fifty percent because the prosecutor accepted two of the four blacks from the original panel of twelve. The jury eventually seated was composed of the two black jurors accepted by the State and ten white jurors. It is also worth noting that the black female juror excused by the prosecutor had been the victim of a recent crime. The prosecutor also challenged, and the trial court excused for cause, two white jurors who had been the victims of past crimes.

The only circumstance arguably tending to establish discriminatory intent in this case is the fact that the victims were white and the defendant was black. Likewise, in *Ross*, the victim was white and the defendant was black. *See id.* at 282, 449 S.E.2d at 559. The only distinctions between this case and *Ross* are that two black jurors were excused in this case, instead of one, and that the crimes charged involved sexual offenses, not murder. These facts do not sufficiently distinguish the instant case from *Ross* to permit us to reach a different conclusion than we reached in that case. Defendant's otherwise bare allegation of racial discrimination based solely on the prosecutor's use of peremptory challenges against two black jurors did not establish a *prima facie* case of purposeful racial discrimination. The trial court correctly concluded that defendant had failed to establish such a *prima facie* case. Therefore, the Court of Appeals.erred in that part of its decision remanding this case to the Superior Court, Guilford County, for a hearing to determine whether the prosecutor's reasons for exercising his peremptory challenges were race-neutral; the remainder of the decision of the Court of Appeals, concluding that the judgments of the trial court were otherwise without error, was correct. Accordingly, we reverse that part of the decision of the Court of Appeals and remand this case to that court in order that the judgments entered against the defendant in the Superior Court, Guilford County, be reinstated.

REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

Justice ORR did not participate in the consideration or decision of this case.

STATE v. QUICK

[341 N.C. 141 (1995)]

Justice FRYE dissenting.

Drawing lines is not easy—in life or in law. Nevertheless, sometimes the line has to be drawn. In *State v. Ross*, 338 N.C. 280, 449 S.E.2d 556 (1994), the prosecutor used his only peremptory challenge against a black juror. Although defendant was black and the victim white, we held that no prima facie case of purposeful racial discrimination had been shown, and the trial court did not err in failing to require the prosecutor to give a race-neutral explanation for the peremptory challenge. I joined in that decision.

*Ross* involved murder. In this case, defendant is charged with, among other crimes, rape and first-degree sexual offense. In *Ross*, the prosecutor challenged one of three black jurors peremptorily. Here, the prosecutor challenged two of four black jurors peremptorily. Although there were many more white than black jurors in the panel here, no white jurors were challenged peremptorily. Where is the line to be drawn? Would the removal of the third black juror be enough to require the prosecutor to give race-neutral reasons for exercising peremptory challenges?

The fact that a prima facie case has been established does not mean that jury selection cannot continue. The establishment of a prima facie case simply shifts the burden to the prosecutor to give a race-neutral explanation for the peremptory challenges. *See Purkett v. Elem*, — U.S. —, —, 131 L. Ed. 2d 834, 839 (1995). As the majority recognizes, the prosecutor's race-neutral explanation does not have to be persuasive or even plausible. *See id.* But he must state a reason for the record, and that reason may be challenged by defendant. *State v. Robinson*, 330 N.C. 1, 16, 409 S.E.2d 288, 296 (1991); *State v. Green*, 324 N.C. 238, 240, 376 S.E.2d 727, 728 (1989).

As the United States Supreme Court noted in *Batson*, "peremptory challenges constitute a jury selection practice that permits 'those to discriminate who are of a mind to discriminate.'" *Batson v. Kentucky*, 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87 (1986). Thus, under *Batson*, defendant can rely on the following facts and circumstances in this case to raise an inference that the prosecutor used peremptory challenges to exclude one or more veniremen from the jury on account of race: (1) a black defendant was charged with rape of a white woman, (2) the jurors challenged peremptorily were of the same race as defendant, (3) no jurors of the race of the victim were peremptorily challenged, and (4) the overwhelming majority of the jurors left on the jury were of the same race as the victim.

I would hold that the trial court erred by ruling that defendant failed to make out a prima facie case of racial discrimination. I would thus affirm the Court of Appeals by remanding this case to the trial court for a hearing on the *Batson* issue. At that hearing, the trial court should determine whether the prosecutor's articulable reasons for peremptory challenges are race-neutral. Defendant will then be given the opportunity to provide additional evidence to rebut the State's contentions. *State v. Green*, 324 N.C. 238, 376 S.E.2d 727. If defendant can establish purposeful racial discrimination, he is entitled to a new trial. If not, the trial court should order commitment to issue in accordance with the judgment entered by the trial court on 15 July 1993.

Justice WEBB joins in this dissenting opinion.