STATE OF NORTH CAROLINA v. KAWAME LLOYD MAYS

No. COA01-1388

(Filed 17 December 2002)

### 1. Homicide— short-form indictment—first-degree murder—constitutionality

A short-form indictment for first-degree murder is constitutional.

### 2. Jury— selection—peremptory challenges—*Batson* challenge

The trial court did not err in a first-degree murder case by allegedly permitting the State to make racially-based peremptory challenges in violation of the Fourteenth Amendment of the United States Constitution and Article I, Sections 19 and 26 of the North Carolina Constitution, because: (1) the record revealed no racially motivated statements made by the prosecutor; and (2) although the prosecutor exercised nearly seventy percent of his peremptory challenges against African-American jurors, other factors supporting an inference of discrimination were not present.

### 3. Homicide— felony murder—motion to dismiss—sufficiency of evidence

The trial court did not err by failing to grant defendant's motion to dismiss the charge of felony murder, because: (1) a criminal defendant is presumed to intend the natural consequences of his act; and (2) the State presented sufficient evidence for a reasonable jury to find that defendant intended to shoot at the victim's truck as the victim drove away.

### 4. Homicide— felony murder—failure to submit lesser-included charge—involuntary manslaughter

The trial court did not err in a felony murder case by failing to submit the lesser-included charge of involuntary manslaughter, because: (1) the trial court was not required to instruct the jury on a lesser-included offense unless the evidence also tended to show that the murder was not committed in the course of the commission of a felony; and (2) all the evidence supported the finding that defendant willfully and wantonly discharged a firearm into an occupied vehicle thereby causing the victim's death.

STATE v. MAYS

[154 N.C. App. 572 (2002)]

Appeal by defendant from judgment entered 28 May 1998 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 21 August 2002.

*Attorney General Roy Cooper, by Assistant Attorneys General John G. Barnwell and Robert C. Montgomery, for the State.*

*Center for Death Penalty Litigation, by Robert Manner Hurley, for defendant-appellant.*

CAMPBELL, Judge.

Defendant was indicted by the Wake County Grand Jury on 4 August 1997 and charged with one count of murder in the death of Michael Walker ("Walker") and one count of murder in the death of Paul Hale. The cases were joined and tried before a jury at the 4 May 1998 session of the Wake County Superior Court, Judge Donald W. Stephens ("Judge Stephens") presiding. The jury was unable to reach a verdict in the death of Paul Hale, and the court declared a mistrial as to that charge.

The evidence regarding the charge of murder of Walker tended to show that defendant met Linda Bass ("Bass"), the only eyewitness to the murder, in early July 1997. After midnight on 11 July 1997, defendant arrived at Bass' house to spend the night on Bass' couch. While defendant slept, Walker arrived at Bass' home. He stayed for a short time and then left with an unidentified man. Approximately an hour later, a fight broke out in the street and the noise awakened defendant and Bass. When Bass saw Walker was being beaten by two men she yelled for them to stop. The men fled and Walker ran to Bass' porch for safety. Walker repeatedly stated he "wasn't doing anything." He asked Bass to walk him to his truck which was parked straight across the street, but Bass told Walker that he would be safe walking to his truck on his own. No words were exchanged between Walker and defendant. As Walker walked to his truck, defendant asked Bass why Walker had asked her to walk him to his truck and Bass explained that he must have been afraid the men who had just beaten him up would return.

As Walker got in his truck, started it, and began to pull away defendant began to shoot his gun. Bass testified defendant was approximately "50 feet" away from the truck, which was "straight across in front of him" when the defendant began shooting. The defendant "shot straight at the truck. And then when the truck was going up the street he took a step up, couple of steps up, and shot at

the back of the truck straight ahead." One of the bullets entered the left side window of the truck, fragmented, and struck Walker in the back of his head, killing him.

Walker's truck then crashed into the back of James Hinton's ("Hinton") car which was parked on the side of the street in front of his home. When Bass asked defendant why he had shot his gun, defendant responded, "I'm sorry."

Defendant testified that he shot from the same place and didn't move, he couldn't see the truck while he was shooting, he didn't mean to shoot Walker, but he was shooting "in the direction of" the truck.

In the death of Michael Walker, the jury returned a verdict of guilty of murder in the first degree based upon the felony murder rule. The court imposed a sentence of life without parole upon the defendant.

Defendant appeals his conviction and contends the trial court erred by: (I) denying defendant's motion to dismiss the indictment on the grounds that it failed to set forth each and every element of first degree murder in violation of the United States and North Carolina Constitutions; (II) permitting the State to make racially discriminatory peremptory challenges; (III) submitting the offense of felony murder to the jury without substantial evidence to support the charge; (IV) failing to submit the lesser included offense of involuntary manslaughter to the jury.

## I. Constitutionality of the Indictment

[1] Defendant contends, for preservation of the issue, that the short-form indictment violates his Fifth, Sixth and Fourteenth Amendment rights of the United States Constitution and Article I, Sections 19, 22, and 23 of the North Carolina Constitution. However, defendant acknowledges the North Carolina Supreme Court has considered the issue and held the short-form indictment constitutional. *State v. Wallace*, 351 N.C. 481, 528 S.E.2d 326, *cert. denied*, 531 U.S. 1018, 148 L.Ed.2d 498 (2000). Thus, we hold accordingly.

## II. Constitutionality of Peremptory Challenges

[2] Defendant contends the court erred by permitting the State to make racially based peremptory challenges in violation of the Fourteenth Amendment of the United States Constitution and Article I, Sections 19 and 26 of the North Carolina Constitution.

The constitutionality of the State's use of a peremptory challenge is determined by application of a three-step inquiry set forth by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L.Ed.2d 69 (1986). The North Carolina Supreme Court recently explained the three steps as follows:

> First, defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race. Second, if such a showing is made, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. Third, the trial court must determine whether the defendant has proven purposeful discrimination.

*State v. Cummings*, 346 N.C. 291, 307-8, 488 S.E.2d 550, 560 (1997) (citations omitted). To properly establish a *prima facie* case, the "defendant need only show that the relevant circumstances raise an inference that the prosecutor used peremptory challenges to remove potential jurors solely because of their race." *State v. Quick*, 341 N.C. 141, 144, 462 S.E.2d 186, 188 (1995).

When the trial court rules against the defendant, and holds the defendant did not establish a *prima facie* case of racial discrimination, appellate review is generally limited to whether the trial court erred in that ruling. *State v. Williams*, 343 N.C. 345, 359, 471 S.E.2d 379, 386-87 (1996). This limitation applies even when the prosecutor has furnished the record with his explanation for the challenge. *Id.*, 343 N.C. at 359, 471 S.E.2d at 387. In such a case, the appellate court considers the prosecutor's reasons only if it determines the trial court erred. *Id.* When, however, the prosecutor volunteers his reasons to the trial court before the trial court rules, then, despite the trial court's ultimate ruling that defendant failed to establish a *prima facie* case, the appellate court proceeds as though the defendant had established a *prima facie* case and examines the prosecutor's explanations. *State v. Cummings*, 346 N.C. 291, 308, 488 S.E.2d 550, 560 (1997). In such a case, the appellate court considers the prosecutor's explanations pursuant to step two of *Batson*, and then proceeds to step three, inquiring whether the trial court was correct in its ultimate determination that the State's use of peremptory challenges did not constitute intentional discrimination. *Id.*

For each *Batson* challenge in this case, Judge Stephens ruled defendant had not adequately set forth a *prima facie* case of racial discrimination. Judge Stephens then offered the prosecutor the opportunity to state his reasons "for the record." With regard to the

first *Batson* challenge the prosecutor declined the opportunity, but for all of the following challenges the prosecutor stated his reasons for the record.[1] Since the prosecutor's statements were made at the direction of Judge Stephens for the record and not to assist the trial court's ruling on the existence of a *prima facie* case, such statements are not considered by the appellate court unless the court determines that the trial court erred in its ruling that defendant failed to establish a *prima facie* case.

"Since the trial judge's findings . . . largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *Batson*, 476 U.S. at 98 n.21, 90 L. Ed. 2d at 89 n.21. Our appellate courts accord great deference in reviewing the trial court's ruling on the establishment of a *prima facie* case. *State v. Norwood*, 344 N.C. 511, 527, 476 S.E.2d 349, 355 (1996). The trial court's ultimate *Batson* decision "will be upheld unless the appellate court is convinced that the trial court's determination is clearly erroneous." *State v. Fletcher*, 348 N.C. 292, 313, 500 S.E.2d 668, 680 (1998).

To review defendant's claim that the trial court erred in ruling that he had failed to establish a *prima facie* case of intentional discrimination, we consider the following factors:

[(1)] whether the 'prosecutor used a disproportionate number of peremptory challenges to strike African-American jurors in a single case;' [(2)] whether the defendant is a 'member of a cognizable racial minority;' . . . [(3)] whether the state's challenges appear to have been motivated by racial discrimination; . . . [(4)] 'the victim's race[;] [(5)] the race of the State's key witnesses[;]' and [(6)] 'whether the prosecutor made racially motivated statements or asked racially motivated questions of black prospective jurors . . . that raise[d] an inference of discrimination.'

*State v. Nicholson*, 355 N.C. 1, 22, 558 S.E.2d 109, 125, *cert denied*, 123 S. Ct. 178, —— U.S. ——, —— L. Ed. 2d —— (2002) (citations omitted).

---

1. "Although we recognize that the State was not required in this case to come forward with neutral explanations for its challenges, we observe that it would often be of benefit to a reviewing court if those reasons were articulated in the record." *State v. Robinson*, 97 N.C. App. 597, 601, 389 S.E.2d 417, 420 (1990). Here, Judge Stephens encouraged the prosecutor to follow this advice by noting that while he may stand on his election not to speak, it would be "prudent" to provide, for the record, his reasons for peremptorily striking a juror.

Here, defendant is African-American, Walker was white, the State's witnesses were both white and African-American, and the State's key witness, the only eyewitness, is African-American. The record reveals no racially motivated statements made by the prosecutor. At the conclusion of jury selection, when addressing the final juror challenged under *Batson*, Judge Stephens explicitly stated, "looking at the face of the entire record in these proceedings the Court cannot say that there has been a *prima facie* showing that race has been a motivating factor in the exclusion of jurors."

The prosecutor exercised nearly 70% (nine of thirteen) of his peremptory challenges against African-American jurors. In *State v. Smith*, 328 N.C. 99, 123, 400 S.E.2d 712, 725 (1991), "the State exercised 80% of the peremptories used to remove black potential jurors." There, the Court held defendant had established a *prima facie Batson* case by proving an inference of racial discrimination. In *Smith*, however, there was also a statement by the prosecutor that "tends to support . . . an inference of discrimination." *Id.* Moreover, the case "involved an interracial killing and attracted much attention," and the "racial emotions and publicity surrounding the case were substantial enough for the defendant to successfully seek a change of venue." *Smith*, 328 N.C. at 122, 400 S.E.2d at 725. As in *Smith*, defendant here was a young, African-American man, and the victims were both white. Unlike *Smith*, however, defendant's motion to change venue was denied, and publicity was such that many jurors had never heard of the case. Therefore, while the percentages of peremptory challenges were high in both cases, other elements supporting an inference are not present in the case at bar.

Since Judge Stephens was present to assess credibility, we will not overturn his judgment unless it was clearly erroneous. Considering all the factors, we cannot say the trial court erred in determining defendant failed to prove a *prima facie Batson* case.

### III. Submission of Felony Murder Charge to the Jury

[3] Defendant contends the trial court erred by failing to grant his motion to dismiss the charge of felony murder and instead submitting the charge to the jury because this charge was not supported by the evidence and therefore violated the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Sections 19 and 23 of the North Carolina Constitution.

An appellate court reviewing such a motion to dismiss for lack of evidence must examine "the evidence adduced at trial in the light

most favorable to the State, in order to determine whether there is substantial evidence of every essential element of the crime." *State v. Pakulski*, 319 N.C. 562, 571, 356 S.E.2d 319, 325 (1987). Substantial evidence is defined as "relevant evidence that a reasonable mind might accept as sufficient to support a conclusion." *State v. Allen*, 346 N.C. 731, 739, 488 S.E.2d 188, 192 (1997). "[T]he evidence need only give rise to a reasonable inference of guilt for the case to be properly submitted to the jury." *State v. Barnett*, 141 N.C. App. 378, 383, 540 S.E.2d 423, 427 (2000), *disc. review denied*, 353 N.C. 527, 549 S.E.2d 552, *aff'd in part*, 354 N.C. 350, 554 S.E.2d 644 (2001).

The felony murder rule applies to this case through the interaction of N.C. Gen. Stat. §§ 14-17 and 14-34.1. The law provides that "[a]ny person who willfully or wantonly discharges or attempts to discharge . . . [a] firearm . . . into any . . . vehicle . . . while it is occupied is guilty of a . . . felony." N.C. Gen. Stat. § 14-34.1 (2001). "A murder . . . committed in the perpetration or attempted perpetration of any . . . felony committed or attempted with the use of a deadly weapon shall be deemed to be murder in the first degree." N.C. Gen. Stat. § 14-17 (2001).

Defendant asserts the State failed to prove he intentionally shot into Walker's truck. The State presented the testimony of Bass, the only eyewitness, to prove that defendant shot "straight at the truck" took a few steps and continued shooting at the truck. Defendant argues that this evidence is insufficient to prove defendant intended to shoot Walker in the truck, but rather "[t]he only credible inference that can be drawn from the evidence is that defendant was attempting to scare Walker away or discourage him from returning to Bass' house." We disagree.

"A criminal defendant is presumed to intend the natural consequences of his act. It is an inherently incredible proposition that defendant could have intentionally fired a shot 'at' the fleeing [automobile] without intending that the bullet go 'into' the vehicle." *State v. Wall*, 304 N.C. 609, 617, 286 S.E.2d 68, 73 (1982). Moreover, "any rational trier of fact could find the defendant intended to fire into the vehicle from the evidence that the defendant pointed the pistol toward the vehicle and fired the pistol so that a bullet went into the vehicle." *State v. Wheeler*, 321 N.C. 725, 727, 365 S.E.2d 609, 610 (1988). Therefore, we conclude that the State presented sufficient evidence to prove defendant committed the felony of intentionally firing a gun into an occupied vehicle. Since the State presented sufficient

evidence for a reasonable jury to find that defendant intended to shoot at Walker's truck as Walker drove away, the crime of felony murder was properly submitted by the trial court to the jury.

### IV. Submission of Involuntary Manslaughter to the Jury

[4] Defendant contends the trial court erred by not submitting the charge of involuntary manslaughter to the jury.

"The trial judge must charge on a lesser included offense if: (1) the evidence is equivocal on an element of the greater offense so that the jury could reasonably find either the existence or the nonexistence of this element; and (2) absent this element only a conviction of the lesser included offense would be justified." *State v. Whitaker*, 307 N.C. 115, 118, 296 S.E.2d 273, 274 (1982). There must be evidence to support a conviction of the lesser offense, "[t]he presence of such evidence is the determinative factor. . . . Mere contention that the jury might accept the State's evidence in part and might reject it in part will not suffice." *State v. Hicks*, 241 N.C. 156, 159-60, 84 S.E.2d 545, 547 (1954). If the crime charged is felony murder, then the trial court need not instruct the jury on a lesser included offense unless the "evidence also tended to show that the murder was not committed in the course of the commission of a felony." *State v. Wilson*, 354 N.C. 493, 506, 556 S.E.2d 272, 281 (2001).

Felony murder requires (1) a felony and (2) a related killing. N.C. Gen. Stat. § 14-17. The felony, here, was "(1) the willful or wanton discharging (2) of a firearm (3) into any building [or vehicle] (4) while it is occupied." *State v. Jones*, 104 N.C. App. 251, 258, 409 S.E.2d 322, 326 (1991); N.C. Gen. Stat. § 14-34.1. Defendant contends he did not commit a felony because he did not act willfully or wantonly in discharging his gun into Walker's truck while Walker drove away.

> [W]ilful as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of the law. Wantonness . . . connotes intentional wrongdoing. . . . Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others.

*State v. Casey*, 60 N.C. App. 414, 416-17, 299 S.E.2d 235, 237 (1983) (citations omitted).

Defendant's argument is similar to the argument asserted by the defendant in *Wall. Wall*, 304 N.C. at 620, 286 S.E.2d at 75. In *Wall*, the

defendant was a convenience store clerk who shot into a car fleeing after one of the occupants stole beer from the store. Defendant appealed his conviction of first degree murder asserting manslaughter was the more appropriate charge. Defendant testified that he did not intend to shoot the victim, but rather fired his gun into the air intending to scare the thieves away. The Court held the trial court could have submitted only the charge of first degree felony murder to the jury, reasoning "all the evidence discloses that defendant killed the victim 'by discharging a firearm into occupied property.'" *Wall*, 304 N.C. at 620-1, 286 S.E.2d at 75 (quoting N.C. Gen. Stat. 14-34.1).

In *Wall*, the defendant asserted a more persuasive argument than in the case at bar. Defendant Wall offered the excuse that he shot over the car attempting to scare the thieves away. His excuse is more supportive of a finding that there was a justification or excuse and therefore lack of willfulness than this defendant's response that he does not know why he started shooting. Moreover, the fact that defendant Wall shot over the car would more strongly support a conclusion that he was not acting wantonly than the eyewitness' testimony in this case that defendant shot "straight at" the truck. Despite these arguments the North Carolina Supreme Court in *Wall* held that all the evidence supported the charge of felony murder, and therefore the trial court could have submitted only the charge of felony murder.

In both *Wall* and this case, all the evidence supports the finding that defendant willfully and wantonly discharged a firearm into an occupied vehicle thereby causing a death. Since all the evidence supports the finding of felony murder, defendant's assignment of error is overruled.

No error.

Judges WYNN and HUDSON concur.