**STATE v. JAMES**

[230 N.C. App. 346 (2013)]

STATE OF NORTH CAROLINA
v.
KELVIN JAMES, JR.

No. COA13-353

Filed 5 November 2013

**Jury—Batson challenge—prima facie showing of discrimination—moot—no purposeful discrimination**

The trial court's findings of fact supporting the dismissal of a *Batson* objection were not clearly erroneous, and the trial court's judgment was left undisturbed. The trial court erroneously found that defendant had failed to make out a *prima facie* showing of discrimination because the trial court heard the State's reasons for striking the jurors prior to making a ruling on defendant's *Batson* objection, rendering the issue of whether defendant made a *prima facie* showing moot. Nonetheless, the trial court conducted a full *Batson* inquiry based on defendant's *Batson* objection and determined there was no showing of purposeful discrimination.

Appeal by defendant from judgments entered 29 March 2012 by Judge W. Allen Cobb in Wayne County Superior Court. Heard in the Court of Appeals 11 September 2013.

*Attorney General Roy Cooper, by Special Deputy Attorney General K. D. Sturgis and Assistant Attorney General Berkley Carrington Skinner, IV, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse, Jr., for defendant-appellant.*

BRYANT, Judge.

Where the trial court's findings of facts supporting a dismissal of a *Batson* objection are not clearly erroneous, we will not disturb the trial court's judgment based upon those findings.

On 26 August 2010, police responded to a report of a shooting at 1170 Richards Street. James Taylor, a resident of Richards Street, reported to police that he saw a person lean out of the passenger window of a car and fire multiple shots at a car in front of it.

Shortly after Taylor's call to police, Shonsi Chavez took Marcus Johnson to a local hospital. Johnson had been shot in the back, neck, and back of the hand. The hospital was able to stabilize Johnson, but he was left paralyzed from the armpits down.

Police were summoned to the hospital where they met with Chavez. Chavez told the investigating officer that he had been driving a blue rental Chevrolet Cobalt on Richards Street, with Johnson sitting in the front passenger seat, when a person in the car behind them began to fire at their car. Johnson was struck several times and rushed to the hospital by Chavez. Chavez went with the officer to the scene of the shooting where spent 9 millimeter shell casings were found. Chavez also gave a written statement identifying Trevis Kinsey as the driver of the vehicle which had followed him and identifying defendant Kelvin James as the passenger in Kinsey's vehicle who fired at Chavez's car.

Johnson testified he was riding with Chavez when the shots were fired, striking him. When asked why defendant had shot at Chavez's car, Johnson stated he had heard that Chavez and Kinsey "had gotten into it" and that a lot of people did not like Chavez.

On 14 September 2010, Kinsey was arrested for assault with a deadly weapon for the shooting of Johnson. In June 2011, Kinsey wrote to his lawyer stating that he wanted "to cooperate" with the investigation. As part of his agreement with prosecutors, Kinsey pled guilty to conspiracy to shoot into an occupied moving vehicle and assault with a deadly weapon with intent to kill inflicting serious injury. Kinsey also agreed to testify against defendant and gave a statement in which he admitted driving the car that followed Chavez. Kinsey identified defendant as the shooter.

Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury on Johnson, assault with a deadly weapon with intent to kill on Chavez, and four counts of discharging a firearm into occupied property. During jury selection, defendant made a *Batson* objection regarding the State's preemptory challenges against four black potential jurors, 3, 5, 8, and 12. During questioning by the trial court, defendant reduced his *Batson* objection to jurors 5 and 8. The trial court then overruled defendant's *Batson* objection against juror 8, citing the juror's statements that he was fearful of reprisal by defendant's family as showing that the State's use of a preemptory challenge against that juror was not racially motivated. After hearing both defendant and the State discuss the State's preemptory challenge against juror 5, the trial court overruled defendant's *Batson* objection as to her as well. The trial court concluded defendant failed to make a *prima facie*

showing of racial discrimination by the State, and announced that formal findings of fact and conclusions of law would be made at the conclusion of the trial.

The jury convicted defendant of the lesser included offense of assault with a deadly weapon inflicting serious injury on Johnson, the lesser included offense of assault with a deadly weapon on Chavez, and four counts of discharging a firearm into occupied property. Defendant was sentenced to twenty-nine to forty-four months for assault with a deadly weapon inflicting serious injury, a consecutive sentence of twenty-nine to forty-four months for discharging a firearm into an occupied moving vehicle, and a consecutive sentence of seventy-five days for assault with a deadly weapon.

Defendant appeals.

---

On appeal, defendant raises two issues: whether the trial court erred in (I) overruling his objection to the State's use of a preemptory challenge against juror 5; and (II) ruling that the State's use of a preemptory strike against juror 5 was not pretextual.

*I.*

Defendant first argues the trial court erred in overruling his objection to the State's preemptory challenge against juror 5 by finding that he failed to establish a *prima facie* case of race discrimination. We disagree.

"The 'clear error' standard is a federal standard of review adopted by our courts for appellate review of the *Batson* inquiry." *State v. Cofield,* 129 N.C. App. 268, 275 n.1, 498 S.E.2d 823, 829 n.1 (1998). "Since the trial judge's findings . . . largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference." *State v. Mays,* 154 N.C. App. 572, 576, 573 S.E.2d 202, 205 (2002) (quoting *Batson v. Kentucky,* 476 U.S. 79, 98 n.21, 90 L. Ed. 2d 69, 89 n.21 (1986)). "The trial court's ultimate Batson decision will be upheld unless the appellate court is convinced that the trial court's determination is clearly erroneous." *Id.* at 576, 573 S.E.2d at 205 (citation and internal quotation omitted.)

"The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 26 of the North Carolina Constitution prohibit race-based peremptory challenges during jury selection." *State v. Taylor,* 362 N.C. 514, 527, 669 S.E.2d 239, 253-54 (2008). A *Batson* objection involves a three-part test as set forth

by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986), and adopted by our Supreme Court for determining whether a juror was impermissibly excluded on the basis of race. *Taylor*, 362 N.C. at 527, 669 S.E.2d 239, 254. To make a *Batson* objection,

> [f]irst, the defendant must make a prima facie showing that the state exercised a race-based peremptory challenge. If the defendant makes the requisite showing, the burden shifts to the state to offer a facially valid, race-neutral explanation for the peremptory challenge. Finally, the trial court must decide whether the defendant has proved purposeful discrimination.

*Id.* (internal citations omitted).

"Step one of the *Batson* analysis, a *prima facie* showing of racial discrimination, is not intended to be a high hurdle for defendants to cross. Rather, the showing need only be sufficient to shift the burden to the State to articulate race-neutral reasons for its peremptory challenge." *State v. Hoffman*, 348 N.C. 548, 553, 500 S.E.2d 718, 722 (1998). However,

> if the trial court requires the prosecutor to give his reasons without ruling on the question of a *prima facie* showing, the question of whether the defendant has made a *prima facie* showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings on whether the stated reasons are a credible, nondiscriminatory basis for the challenges or simply pretext.

*State v. Williams*, 343 N.C. 345, 359, 471 S.E.2d 379, 386 (1996) (citations omitted).

Defendant made his *Batson* objection during jury selection regarding four potential black jurors that the State used preemptory challenges against. Before ruling on defendant's *Batson* objection, the trial court gave the State "[the] opportunity to express the racially neutral reasons for [its] exercise of [its] peremptory challenges." As the trial court heard the State's reasons for striking the jurors prior to making a ruling on defendant's *Batson* objection, the issue of whether defendant made a *prima facie* showing is moot. Accordingly, we must now consider whether the State has met its burden of providing a race-neutral explanation for its peremptory challenges.

> The second part of the *Batson* test requires the State to articulate legitimate reasons which are clear and reasonably specific and related to the particular case to be

tried which give a neutral explanation for challenging jurors of the cognizable group. Defendant has a right of surrebuttal to show that the prosecutor's explanations are a pretext. Finally, it is for the trial court to decide whether the defendant has proved purposeful discrimination.

*State v. Spruill*, 338 N.C. 612, 631, 452 S.E.2d 279, 288 (1994) (citations and internal quotations omitted).

As defendant abandoned his *Batson* objection to jurors 3 and 12, and the trial court itself dismissed defendant's objection as to juror 8 because of his statements at *voir dire*, we must consider whether the State gave a legitimate explanation for why it peremptorily challenged juror 5. During the *Batson* objection hearing, the State explained that:

> Juror No. 5 . . . indicated she is not employed. I generally do not like to have jurors who are not employed. In addition, she has indicated she has been in domestic violence. Her name sounds familiar to me. I have been one of the primary prosecutors of domestic violence cases for some time now. That's not as much recently, but it gives me some cause for concern with me sort of thinking her name sounds familiar, and it being domestic violence, to think I have been associated in some fashion with a case involving her.

Defendant, on rebuttal, contended that:

> I would rebut the reasoning concerning [juror 5]. The State clearly stated because she was unemployed, that's why she was let go. Obviously the State kept [a white juror] whose first statement to the State was that he was unemployed and had been so for a while and that he worked in construction. So I would argue against the unemployment reason.

The trial court overruled defendant's objection as to juror 5, finding that "[d]efendant has not made a prima facie showing of discrimination . . . ." We note that the language the trial court used referencing defendant's *Batson* objection is misleading, as the order's conclusion that "[d]efendant has failed to make out a prima facie showing of discrimination" implies that defendant's objection was dismissed under the first part of a *Batson* inquiry. While we think the trial court erred in finding "[d]efendant has failed to make out a prima facie showing of discrimination," as indicated earlier, the issue of whether or not defendant made a *prima*

*facie* showing is moot. On this record it is clear the trial court ultimately determined there was no purposeful discrimination in the State's exclusion of juror 5.

> Factors to which this Court has looked in the past to help determine the existence or absence of purposeful discrimination include (1) the susceptibility of the particular case to racial discrimination; (2) whether similarly situated whites were accepted as jurors; (3) whether the State used all of its peremptory challenges; (4) the race of the witnesses in the case; (5) whether the early pattern of strikes indicated a discriminatory intent; and (6) the ultimate racial makeup of the jury. In addition, [a]n examination of the actual explanations given by the district attorney for challenging black veniremen is a crucial part of testing defendant's *Batson* claim. It is satisfactory if these explanations have as their basis a "legitimate hunch" or "past experience" in the selection of juries.

*State v. Robinson,* 336 N.C. 78, 93-94, 443 S.E.2d 306, 312-13 (1994) (citations and internal quotations omitted).

Here, the State accepted a white male juror who was unemployed while using a preemptory challenge against a black female juror who was also unemployed. The State used four of its six preemptory challenges against black potential jurors. The race of defendant, his victims, and all witnesses to the instant case is black. The trial court asked the State to explain its preemptory challenges against the four potential jurors, and defendant was allowed to rebut. In making its formal order as to defendant's *Batson* objection, the trial court made fourteen findings of fact:

> No. 1. The Court has observed the manner and appearance of counsel and jurors during voir dire and has made all relevant determinations of credibility for purposes of this order.
>
> No. 2. In making these findings of fact the undersigned has made determinations as to the race of various individuals. As to the jurors, any findings of race are based upon statements provided by the jurors themselves. As to the parties, lawyers, and witnesses, findings of race are based upon statements of counsel, stipulations of counsel, and the lack of objections to observations of the undersigned

noted at the time of the announcement of this order.

No. 3. The Defendant in this case is black. The alleged victim in this case was black. The key witnesses in this case are black.

No. 4. As of the time that the State attempted to exercise the peremptory challenges, eight jurors had been accepted by the State.[1]

No. 5. As of the time that the State attempted to exercise the peremptory challenges the State had exercised zero peremptory challenges.

No. 6. The State made no statements or questions which tend to support an inference of discrimination in the jury selection process.

No. 7. The State made no statements or questions which tend to refute an inference of discrimination in the jury selection process.

No 8. The State has not repeatedly used peremptory challenges against blacks so as to tend to establish a pattern of strikes against blacks in the venire.

No. 9. The State has not used a disproportionate number of peremptory challenges to strike black jurors in this case.

No. 10. The State's acceptance rate of potential black jurors does not indicate a likelihood of discrimination in the jury selection process.

No. 11. In the exercise of discretion the Court proceeds with consideration of racially neutral reasons for exercise of the peremptory challenges without first determining whether or not a prima facie case of discrimination has been shown. The reasons offered by the State were as follows:

As to Juror No. 3 . . . the State alleged that he had been previously charged by an officer with assaulting his wife,

1. The record does not indicate the racial make-up of these eight jurors. The final jury list shows that the State and defendant each made five preemptory challenges during jury selection. Defendant made one challenge for cause and the State made two. The record does not indicate the race of any of the jurors challenged by defendant.

and that . . . the Assistant District Attorney in this case, had prosecuted this juror. Further, she indicated that she will call a witness in this case that was a witness in this juror's prosecution.

As to Juror No. 5  . . . that Juror 5 indicated that she was unemployed, and [the Assistant District Attorney] indicated that she does not like to have unemployed jurors on her juries. She further said that she was skeptical of this juror because this juror indicated she had been involved in a domestic violence case. [The Assistant District Attorney] is a prosecutor of domestic violence cases and was afraid that she may have prosecuted the case that this juror was involved with.

As to Juror No. 8  . . . that Juror No. 8 indicated that he thinks the Defendant's family members have been to his house for a party. Juror No. 8 further said he is afraid that the family members may come over to his house after the trial of this matter and said that he would try to be fair, but he remained very concerned as to his personal safety.

As to Juror No. 12  . . . [the Assistant District Attorney] indicated that she had checked criminal backgrounds and had discovered that this juror had been charged with assault by pointing a gun; he was ultimately found not guilty of that charge, but she indicated a concern that the nature of that charge is similar to the charge in this case.

No. 12.  The Defendant then was offered an opportunity to rebut the reasons offered by the State and in such rebuttal stated (1) that Defendant abandoned its challenges to Jurors No. 3 and 12; and that their challenges as to 5 and 8 were based solely on race.

No. 13.  The Court finds the Assistant District Attorney to be credible in stating racially neutral reasons for the exercise of the peremptory challenges.

No. 14.  In response to such reasons stated by the Assistant District Attorney Defendant's Counsel has not shown the Assistant District Attorney's explanations are pretextual.

In its conclusions of law, the trial court noted that:

[B]ased upon consideration of presentations made by both sides and taking into account the various arguments presented, the Defendant has not proven purposeful discrimination in the jury selection process in this case.

Based upon the foregoing findings of fact the Court makes the following conclusions of law:

(1) No determination has been made as to the presence or absence of sufficient racially neutral reasons for the State's exercise of peremptory challenges as to the four jurors as Defendant has failed to make out a prima facie showing of discrimination in the jury selection process. It is, THEREFORE, ORDERED, that Defendant's objection to the State's exercise of the peremptory challenges as to potential Jurors No. 3, 5, 8 and 12, are overruled, and the peremptory challenges are allowed.

These findings of fact adhere to the requirements of a *Batson* inquiry, as the trial court made specific findings as to race, the prevalence of minority jurors being dismissed, and the State's reasoning for its use of the preemptory challenges. *See State v. Barden*, 356 N.C. 316, 344, 572 S.E.2d 108, 127-28 (2002) (holding that although numerical analysis of peremptory challenges used may be useful to a *Batson* analysis, it is not dispositive). Defendant's opportunity to rebut the State's reasoning was also considered. Moreover, the trial court made particular findings as to the State's reasons for peremptorily challenging each of the four potential jurors. *See State v. Smith*, 328 N.C. 99, 124, 400 S.E.2d 712, 726 (1991) ("As . . . jury selection is more "art than science," . . . [s]o long as the motive does not appear to be racial discrimination, the prosecutor may exercise peremptory challenges on the basis of "legitimate hunches" and past experience." (citation and internal quotations omitted)). As such, the trial court's findings of fact and conclusions of law follow the line of inquiry set forth in *Batson* and do not indicate that the State acted with racial purpose in exercising its preemptory challenges.

Notwithstanding the language referencing a "prima facie showing" in the trial court's order, it is clear the trial court conducted a full *Batson* inquiry based on defendant's *Batson* objection and determined there was no showing of purposeful discrimination. As the trial court's determination was not clearly erroneous, we uphold the trial court's ultimate decision to dismiss defendant's *Batson* objection. *See Mays*, 154 N.C. App. at 576, 573 S.E.2d at 205.

As we find the trial court conducted a full *Batson* inquiry, we need not reach defendant's second argument on appeal.

No error.

Judges HUNTER, Robert C., and STEELMAN concur.