IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-998-2

Filed: 21 July 2020

Columbus County, No. 15 CRS 50590

STATE OF NORTH CAROLINA

v.

ANTIWUAN TYREZ CAMPBELL

Appeal by defendant from judgment entered 2 August 2017 by Judge Douglas B. Sasser in Columbus County Superior Court. Originally heard in the Court of Appeals 19 September 2019, and opinion filed 21 January 2020 upholding defendant's convictions, __ N.C. App. __, 838 S.E.2d 660 (2020). Remanded to the Court of Appeals by Special Order of the North Carolina Supreme Court entered 5 June 2020 for reconsideration in light of *State v. Hobbs*, __ N.C. App. __, 841 S.E.2d 492 (2020), and *State v. Bennett*, __ N.C. __, 843 S.E.2d 222 (2020).

*Attorney General Joshua H. Stein, by Assistant Attorney General Peter A. Regulski, for the State.*

*Geeta N. Kapur for defendant-appellant.*

ARROWOOD, Judge.

I.     Appellate History

We review the instant case on remand from the Supreme Court of North Carolina. In his initial appeal before this Court, Antiwuan Tyrez Campbell ("defendant") appealed from judgment entered against him for first-degree murder.

Defendant argued that the trial court erred by concluding that he failed to establish a *prima facie* claim of racial discrimination in jury selection, as set forth by *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986). In our first opinion, we denied the State's motion to dismiss defendant's appeal for insufficiency of the record and found no error in the trial court's holding that defendant did not make a *prima facie* claim pursuant to *Batson*. *Campbell*, __ N.C. App. at __, __, 838 S.E.2d at 663, 666 (2020).

Our Supreme Court granted defendant's Petition for *Writ of Certiorari* and remanded the appeal to this Court by Special Order for review of our prior ruling, in light of the Supreme Court's recent decisions in *Hobbs*, __ N.C. App. __, 841 S.E.2d 492, and *Bennett*, __ N.C. __, 843 S.E.2d 222. Based upon our review of *Hobbs* and *Bennett* and their application to the facts of the instant case, we reach the same result for the reasons set forth below.

## II.    Background

On 15 April 2015, defendant was indicted for the first-degree murder of Allen Wilbur Davis, Jr., as well as the second-degree kidnapping of K.J.[1] The case came on for trial in Columbus County Superior Court before the Honorable Douglas B. Sasser on 24 July 2017. On that date, the trial court addressed several pretrial motions filed by defense counsel, including "a motion for a complete recordation of all the proceedings." Counsel specifically noted that she was "not requesting that [complete

---

[1] A pseudonym is used to protect the juvenile's privacy.

recordation] include jury selection," and that her motion was "[j]ust for appeal purposes." The trial court granted the motion for recordation. Jury selection commenced the following day. However, as requested by defense counsel, those proceedings were not recorded.

On the second day of jury selection, as the parties were seating alternate jurors, defense counsel objected to the State's use of peremptory challenges, alleging that they were exercised in a racially discriminatory manner in violation of *Batson*. By this point in the proceedings, the State had exercised four peremptory challenges, three of which were used to strike African American prospective jurors: Ms. Vereen, Ms. Holden, and Mr. Staton. Defense counsel asserted that "the State . . . has tried extremely hard for every African-American, to excuse them for cause[,]" adding that "the last two alternate [African American] jurors . . . excused showed no leaning one way or the other or indicated that they would not be able to hear the evidence, apply the law, and render a verdict." Defense counsel further noted that

> [w]e had Ms. Vereen on the front, who the State stayed on her over and over again, trying to get her removed for cause, and they finally used a peremptory on her. And then we move to our alternate, Mr. Staton. [The prosecutor] tried twice to get him removed for cause.

After considering defense counsel's argument, the trial court denied defendant's *Batson* challenge.

Later that day, however, Judge Sasser stated that "upon further reflection, although I do not find that a *prima facie* case has been established for discrimination pursuant to *Batson,* in my discretion, I am still going to order the State to proceed as to stating a racially-neutral basis for the exercise of the peremptory challenges[.]" The State then offered the following the bases for the exercise of its peremptory challenges for each of the stricken African American prospective jurors:

1. The first juror, Ms. Vereen, had indicated that she knew Clifton Davis ("Mr. Davis") and had dated his brother, both of whom were potential witnesses at defendant's trial. Mr. Davis was a friend of defendant, and was allegedly at the scene with him at the time of the crimes.

2. The second juror, Mr. Staton, was challenged because he "made several conflicting statements during the State's questioning to try to ensure if he could be fair and impartial or not." Further, he knew K.J.'s mother, who was "a fact witness and . . . an eyewitness . . . to the kidnapping."

3. The third juror, Ms. Holden, was stricken because she had been a classmate of two potential witnesses at defendant's trial. The State also explained that

> an additional reason for the peremptory strike against Ms. Holden was the fact when she was describing her political science background and nature as a student, she also was indicating that she was a participant, if not an organizer, for Black Lives Matter at her current college with her professor, and whether or not that would have any implied unstated issues that may arise due to either law enforcement, the State, or other concerns we may have.

Following the State's explanation of the bases for the exercise of its peremptory challenges, the trial court reiterated that it "continues to find . . . that there has not been a *prima facie* showing as to purposeful discrimination" in violation of *Batson*.

At the conclusion of the trial, the jury returned verdicts finding defendant not guilty of second-degree kidnapping, but guilty of first-degree murder. Defendant timely appealed.

III.     Discussion

Defendant argues that the trial court erred in ruling that he failed to establish a *prima facie* showing that the State exercised peremptory challenges in a racially discriminatory manner, in violation of *Batson*. The State filed a motion to dismiss defendant's appeal. After first disposing of the State's motion, we turn to the merits of defendant's appeal.

A.     Motion to Dismiss

The State argues that defendant's failure to include in the appellate record a transcript of the jury selection proceedings warrants dismissal of defendant's appeal. We disagree and again deny the State's motion to dismiss on this ground.

The record in this case is minimally sufficient to permit appellate review. We disagree with the proposition that, in order to be entitled to review of a *Batson* claim, a defendant *must* include a verbatim transcript of jury selection in the record. We find no support in our statutes or case law which lead to such a result. We hasten to

add that if a defendant anticipates making a *Batson* discrimination argument, it is

extremely difficult to prevail on such grounds without a transcript of jury selection.

> A three-step process has been established for evaluating claims of racial discrimination in the prosecution's use of peremptory challenges. First, defendant must establish a *prima facie* case that the peremptory challenge was exercised on the basis of race. Second, if such a showing is made, the burden shifts to the prosecutor to offer a racially neutral explanation to rebut defendant's *prima facie* case. Third, the trial court must determine whether the defendant has proven purposeful discrimination.

*State v. Cummings*, 346 N.C. 291, 307-308, 488 S.E.2d 550, 560 (1997) (citations

omitted), *cert. denied*, 522 U.S. 1092, 139 L. Ed. 2d 873 (1998).

In determining whether a defendant has established a *prima facie* case of

discrimination, our Supreme Court has noted that "[s]everal factors are relevant[.]"

*State v. Hoffman*, 348 N.C. 548, 550, 500 S.E.2d 718, 720 (1998).

> Those factors include the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against [African Americans] such that it tends to establish a pattern of strikes against [African Americans] in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike [African American] jurors in a single case, and the State's acceptance rate of potential [African American] jurors.

*Id.* (quoting *State v. Quick*, 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995)).

A verbatim transcript need not be furnished in every case for us to review whether a defendant established a *prima facie Batson* claim before the trial court. *See State v. Sanders*, 95 N.C. App. 494, 499, 383 S.E.2d 409, 412 (1989) (acknowledging even without a verbatim transcript of jury selection, the record contained "the barest essentials" to permit review: "the racial composition of the jury, the number of [African American] jurors excused, and the State's proffered reasons for their exclusion. The record also contains defense counsel's response to the prosecutor's explanations and the trial judge's conclusions."). Yet a defendant must include *some evidence* in the record, in one form or another, shedding light on the aforementioned factors to enable appellate review of a *Batson* claim. A narrative summary of *voir dire* proceedings, made during the *Batson* hearing and agreed to by defense counsel, the prosecutor, and the trial court, as was done here, may suffice to permit review. Moreover, the narrative summary in this case was minimally sufficient to enable review.

While we believe that such a narrative must contain more relevant information in order to prevail, as discussed *infra* in our determination on the merits, unlike the dissent, we find remand to be unnecessary. The dissent opines that the trial court erred in failing to make specific findings of fact as to the *Quick* factors in its determination that defendant had not made a *prima facie* showing, and believes

remand for entry of such findings to be appropriate.[2]  We disagree.  The trial court's

findings on defendant's *Batson* claim were indeed conclusory:  "[A]t this point, the

Court does not find that the State's exercise of peremptory challenges has even

reached [the very low hurdle for making a *prima facie* claim] yet. . . . [T]he Court has

found at this point there's not a *prima facie* showing, and the Court will deny the

*Batson* challenge."

Nonetheless, remand is inappropriate.  While the absence of a transcript of

*voir dire* does not preclude our review, it does preclude remand in the instant case.

"[T]he failure of a trial court to find facts is not prejudicial where there is no '*material*

conflict in the evidence on *voir dire*.'"  *Sanders*, 95 N.C. App. at 500-501, 383 S.E.2d

at 413 (emphasis in original) (quoting *State v. Riddick*, 291 N.C. 399, 408, 230 S.E.2d

506, 512 (1976)).  In *Sanders*, where the trial court entered a similar conclusory

finding,

> we [were] forced to assume that no material difference in
> fact existed since the defendant failed her duty to assure
> the availability of a jury *voir dire* transcript for our review.
> Thus, the trial judge's failure to make adequate factual
> findings d[id] not constitute reversible error.  Further, the
> defendant's failure to secure a *voir dire* transcript ma[de]
> remand for further findings by the trial judge pointless.
> Without such transcript, we still would be unable to
> determine whether the trial judge's [new] findings had a
> basis in fact.

---

[2] We note that our Supreme Court's recent decisions in *Hobbs* and *Bennett* do not support this proposition.  Nor do they address what findings are necessary in an order ruling that a defendant has not made a *prima facie Batson* claim, let alone in the instant circumstances where the record of jury selection is only minimally sufficient to permit our review.

*Id.* at 501, 383 S.E.2d at 413. The Court then proceeded to review the trial court's conclusory finding based "only [on] the information adduced at the *Batson* inquiry." *Id.* Such is the appropriate course of action in this case.

###### B.    Reviewing the Merits of Defendant's *Batson* Claim

Reviewing defendant's *Batson* claim based upon the transcript of the trial court's hearing on the matter, we find no error.

"[T]he State's privilege to strike individual jurors through peremptory challenges[ ] is subject to the commands of the Equal Protection Clause." *Batson*, 476 U.S. at 89, 90 L. Ed. 2d at 82. "When the government's choice of jurors is tainted with racial bias, that overt wrong casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial." *Miller-El v. Dretke*, 545 U.S. 231, 238, 162 L. Ed. 2d 196, 212 (2005) (internal quotation marks, alterations, and citation omitted). When a defendant makes such an allegation, the trial court is obligated to address defendant's claim with the three-step analysis set forth in *Cummings*, 346 N.C. at 307-308, 488 S.E.2d at 560, detailed *supra* part A.

The trial court's orders concerning jury selection are entitled to deference on review. *See State v. Dickens,* 346 N.C. 26, 42, 484 S.E.2d 553, 561 (1997) (noting that the trial court is afforded deference on jury selection rulings because the trial court has "the opportunity to see and hear a juror and has the discretion, based on its observations and sound judgment, to determine whether a juror can be fair and

impartial") (citation omitted). Thus, we "must uphold the trial court's findings unless they are clearly erroneous." *State v. Cofield,* 129 N.C. App. 268, 275, 498 S.E.2d 823, 829 (1998) (internal quotation marks and citation omitted).

"[W]hen a trial court rules that the defendant has failed to establish a *prima facie* case of discrimination, this Court's review is limited to a determination of whether the trial court erred in this respect." *State v. Bell,* 359 N.C. 1, 12, 603 S.E.2d 93, 102 (2004) (citation omitted), *cert. denied,* 544 U.S. 1052, 161 L. Ed. 2d 1094 (2005). However, an exception to this limited scope of review applies where the subsequent proceedings of the trial court render moot its initial determination that a defendant has not established a *prima facie Batson* claim. *See Hobbs*, __ N.C. App. at __, 841 S.E.2d at 499-501 (citations omitted). In such cases, our review proceeds to the remaining steps of the *Batson* inquiry. *Id.*

When the State "volunteers [its] reasons for the peremptory challenges in question before the trial court rules [on] whether the defendant has made a *prima facie* showing, . . . the question of whether the defendant has made a *prima facie* showing becomes moot, and it becomes the responsibility of the trial court to make appropriate findings on whether" the proffered explanation is nondiscriminatory. *State v. Williams,* 343 N.C. 345, 359, 471 S.E.2d 379, 386 (1996) (citations omitted), *cert. denied,* 519 U.S. 1061, 136 L. Ed. 2d 618 (1997).

This result does not necessarily follow where the State provides its race-neutral reasons for exercising its peremptory challenges only when required to do so by the trial court after a ruling that no *prima facie* claim has been made. As noted by our Supreme Court in its recent decision in *Hobbs*, two results may follow in such instances. Where the trial court rules that a defendant has not made a *prima facie Batson* claim, proceeds to require the State to provide its nondiscriminatory reasons for its peremptory challenges, and then enters findings approving of the State's offered reasons, step one of the *Batson* inquiry is rendered moot. *Hobbs*, __ N.C. App. at __, 841 S.E.2d at 500-501 (citations omitted).

In *Hobbs*, the trial court determined that the defendant had not made out a *prima facie Batson* claim. *Id.* at __, 841 S.E.2d at 496. The court then asked the State, for purposes of the record, to explain its use of peremptory challenges against the African American jurors it had excused thus far. *Id.* After the State offered its reasons, the trial court gave the defendant an opportunity to rebut the State's explanations and argue that they were pretextual. *Id.* The trial court characterized the proceedings as "a full hearing on the defendant's *Batson* claim." *Id.* Following the hearing, the court made extensive oral findings in support of an alternate ruling that the State's offered reasons for the challenges were not pretextual. *Id.* at __, 841 S.E.2d at 496-97. Our Supreme Court held that these steps taken by the trial court after its initial ruling that the defendant had not established a *prima facie Batson*

claim rendered the initial ruling moot. *Id.* at __, 841 S.E.2d at 500-501. Thus, the Court engaged in full review of the trial court's findings on the State's offered reasons and the defendant's contention that they were pretextual. *Id.*

On the other hand, where the trial court rules that a defendant has not made a *prima facie Batson* claim, proceeds to require the State to provide its nondiscriminatory reasons for its peremptory challenges, and then does not make any findings assessing the veracity of the State's explanations, step one of the court's *Batson* inquiry is not rendered moot. *See Hoffman*, 348 N.C. at 551-52, 500 S.E.2d at 721.

Here, the trial court's treatment of defendant's *Batson* claim more closely resembles the proceedings in the *Hoffman* line of cases than in *Hobbs*. The State only offered the nondiscriminatory bases for its peremptory challenges after the trial court required it to do so, after the court's ruling that defendant's *prima facie* claim failed. Unlike *Hobbs*, here the court did not allow defense counsel to argue that the State's proffered nondiscriminatory reasons for the challenges were pretextual. The court's language clearly indicated its opinion that the State had provided sufficient nondiscriminatory reasons was not the basis of its decision:

> And the Court continues to find . . . that there has not been a *prima facie* showing as to purposeful discrimination. And the Court finds that even if there had been a showing, that the State has offered a race-neutral justification as to the exercise of each of its peremptory challenges thus far, and there's been no showing or evidence of purposeful

discrimination. And, again, the Court denies the Batson challenge.

Furthermore, the court did not make extensive findings on the State's reasons, nor did it characterize the proceedings as a "full hearing" on defendant's *Batson* claim, as did the trial court in *Hobbs*. Indeed, in the case at bar the court clearly did not conduct a full hearing that would have required defendant to have an opportunity to rebut the State's proffered reasons.

Therefore, step one of the trial court's *Batson* inquiry was not rendered moot. Accordingly, we are precluded from considering in our analysis the reasons given for the State's exercise of the peremptory challenges to the three African American jurors at issue, as we would if the trial court had reached step two of its *Batson* inquiry.

Next, we address defendant's argument that the trial court's order on his *Batson* claim is facially deficient. Defendant asserts that in its written order, the trial court "found only that there was not a *prima facie* showing made to establish any violations by the State for its exercise of peremptory challenges." However, given that the court never reached the second step of the *Batson* analysis, this was the only finding that was required. The trial court is only tasked with making "specific findings of fact at each stage of the *Batson* inquiry that it reaches." *State v. Headen*, 206 N.C. App. 109, 114, 697 S.E.2d 407, 412 (2010) (citation omitted). The record on appeal includes the trial court's order on defendant's *Batson* challenge, setting forth

the factual basis of the challenge and the court's decision on the matter. Thus, the trial court's order is not facially deficient, as defendant contends.

We now turn to a substantive analysis of the trial court's order finding that defendant failed to establish a *prima facie Batson* claim. From the transcript of the hearing, we are only able to ascertain defendant's race and that the State used three of its four peremptory challenges to remove prospective African American jurors and alternates.[3] However, we do not know the victim's race, the race of key witnesses, questions and statements of the prosecutor that tend to support or refute a discriminatory intent, or the State's acceptance rate of potential African American jurors. Finally, we see nothing in the record from which we can ascertain the final racial composition of the jury.

We will not "assume error by the trial judge when none appears on the record before" us. *State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 645 (1983) (citation omitted). Without more information regarding the factors set forth in *Hoffman* and *Quick,* defendant has not shown us that the trial court erred in its finding that no

---

[3] As noted by the dissent, the hearing transcript sufficiently establishes the race of the challenged jurors for our review by clearly indicating that the trial court and counsel for the State and defendant agreed as to the race of each juror at issue. *See Bennett*, __ N.C. at __, 843 S.E.2d at 232-33 (internal quotation marks and citations omitted) (holding that race of challenged jurors at issue can be established for appellate review where "the record reveals the complete absence of any dispute among counsel for the parties and the trial court concerning the racial identity of the persons who were questioned during the jury selection process, . . . resulting in what amounts to a stipulation of the racial identity of the relevant prospective jurors. . . . [Such a stipulation] may take a variety of forms and may be found by implication.").

*prima facie* showing had been made. Therefore, we uphold the trial court's ruling on the merits of defendant's *Batson* claim.

Our Supreme Court's recent decision in *Bennett* does not affect the result of this case. In *Bennett*, our Supreme Court held that the defendant had made a *prima facie Batson* claim where record revealed that "all of the State's peremptory challenges were directed to African American prospective jurors, . . . the State did not peremptorily challenge any white prospective juror, and . . . neither of the African American jurors that the State peremptorily challenged provided any answers during the course of the jury selection process that cast any doubt upon their ability to be fair and impartial to the State." __ N.C. at __, 843 S.E.2d at 237-38 (footnote omitted).

Here, one of the State's peremptory challenges was exercised against a white prospective juror and three were exercised against African American prospective jurors. Defendant has failed to preserve an adequate record concerning the challenged jurors' answers to any questions asked by the State. While we are concerned that it appears seventy-five percent of the State's peremptory challenges involve African American prospective jurors, this standing alone is not sufficient to sustain a *Batson* challenge. *See State v. Barden*, 356 N.C. 316, 344, 572 S.E.2d 108, 127 (2002) (citation omitted) (stating that numerical analyses of relative proportion of State's strikes used against potential jurors of each race and overall acceptance rate of potential jurors of each race not alone dispositive of question whether

defendant has established *prima facie Batson* claim), *cert. denied*, 538 U.S. 1040, 155 L. Ed. 2d 1074 (2003); *State v. Maness*, 363 N.C. 261, 275-76, 677 S.E.2d 796, 805-806 (2009) (citations omitted) (holding State's use of five of eight peremptory strikes against African American potential jurors insufficient to establish *prima facie Batson* claim), *cert. denied*, 559 U.S. 1052, 176 L. Ed. 2d 568 (2010); *State v. Lemons*, No. COA12-913, 2013 WL 152353, at *3-*4 (N.C. Ct. App. Jan. 15, 2013) (holding State's use of four peremptory challenges against potential African American jurors and none against potential white jurors did not amount to *prima facie Batson* claim); *State v. Mays*, 154 N.C. App. 572, 577, 573 S.E.2d 202, 206 (2002) (holding mere fact of State's use of seventy percent, or nine of thirteen, of peremptory challenges against African American prospective jurors insufficient to establish *prima facie Batson* claim). Given the posture in which we find this case, where defendant's trial counsel specifically declined to have jury selection recorded and the deficient record with respect to the other *Quick* factors, we are unable to find the trial court erred in its determination that defendant failed to establish a *prima facie Batson* violation.

Defendants are entitled to have their *Batson* claims and the trial court's rulings thereon subjected to appellate scrutiny. To do so, it is incumbent on counsel to preserve a record from which the reviewing court can analyze the *Quick* factors. Thus, we urgently suggest that all criminal defense counsel follow the better practice and request verbatim transcription of jury selection if they believe a *Batson* challenge

might be forthcoming.  However, if that is not initially done, it is incumbent upon counsel to place before the trial court evidence speaking to all the *Quick* factors for evaluation on appeal.  Without such information, it is highly improbable that such a challenge will succeed.  Such is the pitfall of defendant's case in this appeal.

## IV.   Conclusion

For the foregoing reasons, we find no error.

NO ERROR.

Judge ZACHARY concurs.

Judge HAMPSON concurs in part, dissents in part by separate opinion.

No. COA18-998-2 – *State v. Campbell*

HAMPSON, Judge, concurring in part, dissenting in part.

Having reconsidered this matter in light of our Supreme Court's recent decisions in *State v. Hobbs*, ___ N.C. ___, 841 S.E.2d 492 (2020), and *State v. Bennett*, ___ N.C. ___, 843 S.E.2d 222 (2020), I continue to concur in the majority opinion in part and dissent in part. In my prior dissent, I concluded the appropriate remedy in this case was a remand for purposes of allowing the trial court to make an additional record on the preliminary question of whether Defendant had established a prima facie *Batson*[4] challenge. I reach the same result here.

First, I continue to agree with the majority the record before us is sufficient to permit appellate review. *See State v. Sanders*, 95 N.C. App. 494, 499, 383 S.E.2d 409, 412 (1989) (acknowledging that although the "lack of a *voir dire* transcript detracts from our ability to review the substance of the proffered reasons," the record contained "the barest essentials" to permit review: "the racial composition of the jury, the number of black jurors excused, and the State's proffered reasons for their exclusion[,]" while also noting "[t]he record also contains defense counsel's response to the prosecutor's explanations and the trial judge's conclusions"). Consequently, I concur that the State's Motion to Dismiss the Defendant's Appeal was and remains correctly denied.

---

[4] *Batson v. Kentucky*, 476 U.S. 79, 90 L. Ed. 2d 69 (1986).

*Hampson, J., concurring in part, dissenting in part.*

Despite concluding Defendant in this case preserved his *Batson* challenge for review even without complete recordation or a transcript of voir dire, the majority, in effect, still concludes the record is insufficient to review Defendant's *Batson* challenge and holds Defendant has failed to show error in his case. Thus, this case continues to illustrate the immense difficulty in preserving a *Batson* challenge for appellate review that still remains under our existing caselaw. I agree a verbatim transcript of jury selection is not always necessary to preserve a *Batson* challenge. Indeed, I suspect in many cases the need to make a *Batson* challenge only becomes apparent during the voir dire and after a defendant's opportunity to request complete recordation. Nevertheless, if there is any lesson to be drawn here from the majority result, it appears it is that the surest (if not the only) way to preserve a *Batson* challenge is to request recordation of jury voir dire in every single case for every single defendant.

Of course, this recordation is expressly *not* required by statute in noncapital cases. *See* N.C. Gen. Stat. § 15A-1241(a)(1) (2019). Thus, there must be another way to establish the necessary record to preserve the issue for appellate review. *See, e.g.*, *State v. Shelman*, 159 N.C. App. 300, 310, 584 S.E.2d 88, 96 (2003) (requiring "a transcript *or some other document setting out pertinent aspects of jury selection*" in order to review a defendant's *Batson* challenge (emphasis added)). Our Supreme Court in *Bennett* illustrated through its prior caselaw such a pathway already exists:

this path simply requires the trial court and counsel for the parties to work cooperatively to recreate the record by agreement or denoting where there is a disagreement of fact. *See* ___ N.C. at ___, 843 S.E.2d at 231-34 (citations omitted). Such a mechanism also already exists in our statutes governing North Carolina criminal procedure. *See* N.C. Gen. Stat. § 15A-1241(c) ("When a party makes an objection to unrecorded statements or other conduct in the presence of the jury, upon motion of either party the judge must reconstruct for the record, as accurately as possible, the matter to which objection was made."). Here, for example, the trial court and lawyers cooperated to partially recreate the record. Specifically, the parties each put on the record their respective positions as to each peremptory challenge agreeing the State used three out of four challenges on African American jurors and another African American juror was excused for cause.

The Supreme Court's decision in *Hobbs* illustrates another task of vital importance for trial courts: a trial court should explain the reasoning behind its decision after considering all the circumstances relevant to the *Batson* challenge. ___ N.C. at ___, 841 S.E.2d at 502. While *Hobbs* was not addressing the prima facie inquiry, its lesson still holds. The trial court's ability to make firsthand observations of jury selection and inquiries of trial counsel is exactly why we—as an appellate court—must show great deference to the trial court. *See State v. Nicholson*, 355 N.C. 1, 21, 558 S.E.2d 109, 125 (2002) ("The trial court's determination is given deference

on review because it is based primarily on firsthand credibility evaluations." (citation omitted)); s*ee also State v. Hoffman*, 348 N.C. 548, 554, 500 S.E.2d 718, 722 (1998) (citations omitted).  This is also why, however, it is so imperative that " '[t]o allow for appellate review, the trial court must make specific findings of fact at each stage of the *Batson* inquiry that it reaches.' " *State v. Headen*, 206 N.C. App. 109, 114, 697 S.E.2d 407, 412 (2010) (quoting *State v. Cofield*, 129 N.C. App. 268, 275, 498 S.E.2d 823, 829 (1998)).  Here, the trial court did not make specific findings of fact to permit appellate review regarding the relevant factors set out in *State v. Quick*[5] in determining whether there was a prima facie showing by Defendant under our *Batson* analysis.  *See* 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995) (citation omitted).  In my view, the failure to explain how the trial court reached its decision—Defendant failed to establish even a prima facie *Batson* challenge despite 75% of peremptory challenges being exercised against African American jurors—was error.

On the record we do have before us, I am persuaded Defendant's objection to the use of 75% of the State's peremptory challenges on African American jurors in this case sufficiently places this case in line with *State v. Barden* so as to require the trial court to conduct a more fulsome analysis of Defendant's objection and whether

---

[5] *State v. Quick*, 341 N.C. 141, 145, 462 S.E.2d 186, 189 (1995) ("Those factors include the defendant's race, the victim's race, the race of the key witnesses, questions and statements of the prosecutor which tend to support or refute an inference of discrimination, repeated use of peremptory challenges against blacks such that it tends to establish a pattern of strikes against blacks in the venire, the prosecution's use of a disproportionate number of peremptory challenges to strike black jurors in a single case, and the State's acceptance rate of potential black jurors." (citation omitted)).

Defendant established a prima facie *Batson* challenge, including making specific findings of fact sufficient for appellate review. *See* 356 N.C. 316, 344-45, 572 S.E.2d 108, 127-28 (2002) (holding the use of 71.4% of peremptory challenges on African American jurors was supportive of a prima facie *Batson* violation). *Barden*, on a more complete record, held a prima facie *Batson* violation had been established. Notably, there, our Supreme Court pointed out there was "no hint of racism" in the prosecutor's questions and even noted the prosecutor accepted two (of seven) African American jurors. *Id*. at 343-44, 572 S.E.2d at 127. Rather, the Supreme Court looked to both the acceptance rate and the rate upon which the State exercised its peremptory challenges against African American jurors.[6] Acknowledging a numerical analysis is not necessarily dispositive, the *Barden* Court nevertheless concluded the numerical analysis was useful in determining a prima facie showing had been made. *Id*. at 344, 572 S.E.2d at 127 (citation omitted). In *Barden*, the numerical analysis revealed, at least from a prima facie standpoint, a stark pattern in the acceptance and rejection rates of African American jurors.

I would still not go so far on this record as to hold Defendant met his burden to establish a prima facie case for a *Batson* violation. In light of *Barden*, however,

---

[6] In *Barden*, the State used five of seven peremptory challenges on African American jurors—the other two were used to strike a white juror and a Native American juror. At the same time, it also appears there was a total of only seven African American prospective jurors called for voir dire—of which the State struck five and accepted two. *Id*. at 344, 572 S.E.2d at 127. In other words, in that case, the State used 71.4% of its peremptory strikes against African American jurors while also striking 71.4% of all the eligible African American jurors.

*Hampson, J., concurring in part, dissenting in part.*

the use of 75% of peremptory strikes against African American jurors in this case requires more explanation and context for the trial court's determination no prima facie showing had been made.  In particular, for example, while we know the State used 75% of its peremptory challenges on African American jurors and struck another for cause, we do not know the overall makeup of the jury pool or the rate at which African American jurors were accepted.[7]

Consequently, I would grant the limited remedy of remanding this case to the trial court for specific findings of fact in order to permit appellate review of the trial court's decision, including any further evidentiary proceedings the trial court deems necessary to accommodate its fact finding as to the factors it deems relevant.  *Cf. Hoffman*, 348 N.C. at 555, 500 S.E.2d at 723.  As such, I respectfully dissent from the majority result affording Defendant no relief from judgment.

---

[7] It is significant neither the defense nor the State set out the makeup of the jury on the record. Under our caselaw, the acceptance rate of jurors seems to be just as applicable as the rejection rate to either establishing or defending a prima facie *Batson* challenge.  Further, the fact the *only* African American prospective jurors discussed were the four excused either for cause or peremptorily could imply those were the only four African American prospective jurors subjected to voir dire.  Certainly, there is also no record before us of any African American juror actually being seated in this case.